IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| STEPHEN R. COLLETT and<br>FELICITY COLLETT,<br><br>Plaintiffs,<br><br>v.<br><br>OLYMPUS OPTICAL CO., LTD., and<br>ADVANCED STERILIZATION PRODUCTS,<br>a Division of Ethicon, Inc.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    CIVIL ACTION<br>   FILE NO. 3:18-CV-00066-CDL |

## AMENDED COMPLAINT

COME NOW, Plaintiffs, Stephen R. Collett and Felicity Collett, and file this their

Amended Complaint against Olympus Optical Co., Ltd. and Advanced Sterilization Products, a

Division of Ethicon, Inc.[1] with this Court as follows:

### PARTIES, JURISDICTION AND VENUE

1.    Plaintiff Stephen R. Collett is a professor of veterinary medicine who resides at

4271 Colham Ferry Road, Watkinsville, Oconee County, Georgia.

2.    Plaintiff Felicity Collett is Plaintiff Stephen Collett's wife, who also resides at

4271 Colham Ferry Road, Watkinsville, Oconee County, Georgia.

---

[1]    Plaintiffs' original Complaint named Advanced Sterilization Products Services, Inc. as a party
Defendant.  Plaintiffs' Amended Complaint corrects the named party Defendant as Advanced
Sterilization Products, a Division of Ethicon, Inc., as identified in Defendant's Motion to Dismiss
[Doc. 8].

3.      Upon information and belief, Defendant Olympus Optical Co., Ltd. ("Olympus") is an alien corporation whose principal office is in the country of Japan at Shinjuku Monolith, 2-3-1 Nishi-Shinjuku, Shinjuku-ku, Tokyo 163-0914.

4.      Advanced Sterilization Products, a Division of Ethicon, Inc. ("ASP") is a foreign corporation, organized under the laws of New Jersey, and maintains its principal office in Somerville, New Jersey.

5.      ASP has registered to conduct business in Georgia with the Georgia Secretary of State, and this is subject to the exercise of personal jurisdiction of this Court.

6.      ASP maintains its registered office in this state at C.T. Corporation System, 289 S. Culver Street, Lawrenceville, Georgia 30046 and may be served with process and a copy of this Complaint there.

7.      Defendant Olympus is subject to the jurisdiction of this Court pursuant to the Georgia Long Arm Statute, O.C.G.A. § 9-10-91, because Olympus transacts business within the state, has committed a tortious act or omission within this state, and/or has committed a tortious injury in this state caused by an act or omission outside of this state.

8.      Olympus regularly does and solicits business, and engages in other persistent courses of conduct, and derives substantial revenue from services rendered in the State of Georgia.

9.      Defendant Olympus may be served with summons and process in accordance with the *Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, (November 15, 1965) 20 U.S.T. 361 (hereinafter "Hague Convention"), Article 5(1)(a).

10.     Jurisdiction and venue are proper in this Court.

<u>FACTS</u>

11.     Plaintiffs Stephen and Felicity Collett immigrated to the United States from South Africa.

12.     Plaintiff Stephen Collett applied for, and obtained, naturalization as a Citizen of the United States on November 9, 2010.

13.     Plaintiff Felicity Collett applied for naturalization as a Citizen of the United States at the same time as Plaintiff Stephen Collett and was naturalized shortly before Plaintiff Stephen Collett.

14.     As part of the naturalization application process, both Plaintiff Felicity Collett and Plaintiff Stephen Collett were screened for the human immunodeficiency virus (HIV) on or about May 7, 2002.

15.     The results of the HIV screening for both Plaintiffs were negative.

16.     On October 10, 2011, Dr. Jeffery M. Williams, M.D. performed a colonoscopy on Plaintiff Stephen Collett as a screening procedure for colorectal cancer using a type of flexible endoscope called a colonoscope.  The procedure was performed at the Athens Gastroenterology Association, Dr. Williams' clinic in Athens, Georgia.

17.     During the procedure on October 10, 2011, according to the medical records, Dr. Williams removed a polyp from Plaintiff Stephen Collett's rectum using a "cold snare," which created a breach in the blood barrier in Plaintiff Stephen Collett's intestinal tract.

18.     While waiting in the recovery room, Plaintiff Stephen Collett overheard that one of the patients in the clinic had a colonoscopy performed prior to Plaintiff Stephen Collett and that patient had polyps removed during the procedure.

19.     The colonoscope which Dr. Williams used for the procedure was an Olympus model CF-H180AL, designed, manufactured and sold as new by Olympus.

20.     Upon information and belief, Dr. Williams followed the protocol recommended by the Defendants Olympus and ASP for cleaning and sterilization or high-level disinfection of the colonoscope after each use.

21.     During the week prior to November 6, 2011, Plaintiff Stephen Collett was traveling abroad and began to feel ill, and began taking antibiotics as a result.

22.     On Sunday, November 6, 2011, 27 days after the colonoscopy, Plaintiff Stephen Collett visited the Regional First Care Center in Watkinsville, Georgia complaining of fever, night sweats, muscle pain, sore joints, and a skin rash.

23.     In June of 2013, Plaintiff Stephen Collett began experiencing difficulty breathing.

24.     On July 18, 2013, Plaintiff Stephen Collett was admitted into the Athens Regional Medical Center for diagnosis of his unexplained pulmonary symptoms.

25.     Plaintiff Stephen Collett was diagnosed with Pneumocystis pneumonia ("PCP"), a type of pneumonia that is classed as in indicator of Acquired Immune Deficiency Syndrome ("AIDS").

26.     Because his treating physicians could not explain the cause of Plaintiff Stephen Collett's symptoms, on July 22, 2013, Dr. F. Hugh Jenkins ordered an HIV screening for Plaintiff Stephen Collett.

27.     The results of the HIV screening were positive for infection of the HIV 1 virus for Plaintiff Stephen Collett.

28.     Plaintiff Felicity Collett was subsequently screened for HIV.  Plaintiff Felicity Collett's HIV screening was positive for the virus.

29.     Plaintiff Stephen Collett has been diagnosed with advanced stage HIV infection, otherwise known as AIDS.

30.     Plaintiffs were completely shocked by the HIV diagnosis and were unable to determine any possible source of the infection.

31.     Plaintiff Stephen Collett is a research scientist.   Plaintiff Stephen Collett extensively reviewed his medical history and the information available to him in order to determine a source of the infection.

32.     Plaintiff Felicity Collett extensively reviewed her medical history and the information available in order to her to determine a source of the infection.

33.     After exhausting all resources and exercising extraordinary diligence in discovering why they had contracted HIV, Plaintiffs Stephen Collett and Felicity Collett were unable to determine the source of their infection.

34.     Plaintiff Stephen Collett continued treatment with Dr. Williams and visited his office on September 3, 2013.  At no time did Dr. Williams indicate that the source of Plaintiff Stephen Collett's HIV infection could have been a colonoscope.

35.     In March of 2017, Plaintiff Stephen Collett was informed by his dentist about the research of Dr. David Lewis, a former adjunct professor at the University of Georgia.

36.    Dr. Lewis had performed research on transmission of pathogens via flexible colonoscopes, such as the Olympus model CF-H180AL used on Plaintiff Stephen Collett during his colonoscopy on October 10, 2011.

37.    Dr. Lewis and Plaintiff Stephen Collett met for the first time on March 21, 2017 to discuss the possible sources of the Plaintiff's HIV infections.

38.    Through information provided by Dr. Lewis after their initial meeting in March of 2017, Plaintiffs determined that the cause of the HIV infection was the transmission of HIV from a prior patient via the unclean CF-H180AL colonoscope manufactured by Olympus.  This was the first time that Plaintiffs had any indication of the source of their infection.

39.    Through research based upon information provided by Dr. Lewis after their initial meeting in March of 2017, Plaintiffs discovered that CIDEX, the product used for disinfecting the colonoscope, manufactured by ASP and recommended as a (high-level) disinfectant for the Model CF-H180AL colonoscope, was not only ineffective; it actually inhibited proper cleaning and disinfection of the colonoscope.

40.    Accordingly, despite years of diligent research into the source of their infection, it was only after Plaintiffs met Dr. Lewis in March of 2017, that Plaintiffs were able to discover the cause of the HIV infection for the first time.

41.    Olympus failed to warn physicians or Plaintiffs of the dangers inherent in using its colonoscope.

42.    The colonoscope used to examine Plaintiff Stephen Collett was defective in design and in manufacture.  It caused infectious patient materials containing HIV, such as blood, exfoliated skin cells, blood cells, and bits of tissue, to become entrapped in the nooks and

crannies in and around the exterior air-water nozzle located on the distal tip of the colonoscope insertion tube, and in air-water channels located inside the insertion tube.  This entrapped infectious material cannot be disinfected by liquid chemical germicides such as CIDEX; and it is transferred to other patients, causing them to become infected.

43.    Further, Olympus failed to instruct physicians or Plaintiffs that the colonoscope needs to be cleaned and sterilized with a solution such as peracetic acid, which is capable of dissolving patient materials, after each use, in order to prevent the spread of infectious diseases between patients.

44.    Olympus knew that its colonoscope caused cross-contamination and the spread of infectious disease.

45.    Other manufacturers of flexible endoscopes employ the use of disposable plastic sheaths to avoid transferring entrapped infectious patient materials patient to patient.  Vision Sciences Corporation, for example, manufactures and sells sheaths for sigmoidoscopes, which are also inserted into the colon for colorectal cancer screening and are equipped with disposable plastic sheaths.  Olympus, in fact, has patented plastic sheaths for use on colonoscopes, but has never provided these sheaths for use in colonoscopy.

46.    The colonoscope used on Plaintiff Stephen Collett was not fully sterilized before it was inserted into Plaintiff Stephen Collett's body.  The solution used to attempt disinfection of the colonoscope before it was used on Plaintiff Stephen Collett was CIDEX (a glutaraldehyde-based high-level disinfectant), made by ASP.  CIDEX was defective in design and in manufacture when used as recommended in disinfecting the Olympus Model CF-180AL colonoscope, which Olympus manufactured with exterior nooks and crannies and internal air-

water channels that are not fully accessible to brushing.  CIDEX, rather than properly disinfecting Olympus colonoscopes, actually causes infectious patient materials to adhere to surfaces of the colonoscope and remain entrapped in nooks and crannies and internal channels.

47.    CIDEX neither sterilizes the colonoscope, nor does it kill HIV entrapped in infectious patient materials contained therein.  This allows for the spread of HIV and other infectious agents between patients.

48.    ASP knew that CIDEX was a dangerous product if used according to their recommendations.  In a previous application made to the FDA, ASP stated that a 45-minute soak in CIDEX was sufficient to disinfect colonoscopes.

49.    Later in its advertising literature distributed in England, ASP cited studies showing that glutaraldehyde can take several hours to effectively disinfect colonoscopes.  This advertising literature was distributed in support of ASP's peracetic acid product.

50.    Upon information and belief, and easily proven by information in the possession of Defendant ASP, CIDEX was marketed to physicians with specific product information claiming that CIDEX was safe and effective as a high level disinfectant for colonoscopes at the time prior to Plaintiff Stephen Collett's procedure.

51.    On August 13, 2018, CIDEX was marketed on the internet as: "as a worldwide trusted brand for effective high-level disinfection of flexible endoscopes and other medical devices." *See* https://www.emea.aspjj.com/products/manual-solutions/cidex

52.    CIDEX has been marketed for over 45 years as: "as a worldwide trusted brand for effective high-level disinfection of flexible endoscopes and other medical devices." *See* https://www.emea.aspjj.com/products/manual-solutions/cidex

53.     At no time has ASP acknowledged the CIDEX is ineffective for disinfecting a colonoscope, such as the one used during Plaintiff Stephen Collett's procedure.

54.     Specifically on its 501(k) Summary submitted to the Department of Health & Human Services, dated April 12, 2006, ASP stated: "CIDEX Solution is a liquid chemical sterilant/high level disinfectant used for sterilization/high-level disinfection of heat sensitive semi-critical medical devices that cannot be processed by another process."

55.     Also on its 501(k) Summary submitted to the Department of Health & Human Services, dated April 12, 2006. ASP stated: "CIDEX ® Activated Dialdehyde Solution is a liquid chemical sterilant and a high level disinfectant for reprocessing heat sensitive medical/dental devices such as endoscopes, respiratory therapy equipment and ultrasonic transducers."

56.     Thus, ASP knew peracetic acid is effective in removing entrapped patients materials and sterilizing colonoscopes and that CIDEX is not, yet ASP continued to sell CIDEX to the medical community for disinfecting Olympus colonoscopes.

57.     Other manufacturers of flexible colonoscopes, such as Pentax Corporation, manufacture and sell colonoscopes with air-water channels that are fully accessible to brushing. Brushing allows entrapped patient materials to be removed during the pre-cleaning of colonoscopes prior to disinfection or sterilization.  None of the air-water channels in any flexible colonoscopes manufactured by Olympus, including any of its colonoscopes, are fully accessible to brushing.

58.     The colonoscope inserted into Plaintiff Stephen Collett carried with it the HIV virus.  The HIV virus was transferred from the colonoscope to Plaintiff Stephen Collett's perianus, rectum and colon, where the virus infected his body.

59.     Through the normal course of a healthy marriage, Plaintiff Stephen Collett unknowingly transmitted HIV to his wife, Plaintiff Felicity Collett.

## FIRST CAUSE OF ACTION AS AGAINST DEFENDANT OLYMPUS
## (NEGLIGENCE)

60.     Plaintiff repeats, reiterates, and realleges each and every allegation in Paragraphs 1 through 60, with the same force and effect as if more fully set forth herein.

61.     At all relevant times, Defendant Olympus caused all endoscopes, including the CF-180AL Scopes, to be created, researched, tested, designed, manufactured, advertised, promoted, marketed, labeled, supplied, sold and/or distributed and/or was responsible for their creation, research, testing, design, manufacture, advertisement, promotion, marketing, labeling, supplying, sales and/or distribution.

62.     At all relevant times, Defendant Olympus caused the CF-180AL Scope that was used in Plaintiff's procedure to be created, researched, designed, manufactured, advertised, promoted, marketed, labeled, supplied, sold and/or distributed and/or was responsible for its creation, research, testing, design, manufacture, advertisement, promotion, marketing, labeling, supplying, sales and/or distribution.

63.     The CF-180AL Scope used in Plaintiff Stephen Collett's procedure was expected to, and did, reach the Athens Gastroenterology Association without substantial change to the condition in which it was designed, manufactured, promoted, advertised, labeled, supplied, sold, and/or distributed by Defendant Olympus.

64.     When the CF-180AL Scope was used in Plaintiff Stephen Collett's procedure, it had not been substantially changed in design, manufacture or labeling from when Athens

Gastroenterology Association had first received it from Defendant Olympus until the time it was used in Plaintiff's procedure.

65.    Defendant Olympus had a duty to exercise reasonable care in the creation, design, research, manufacture, testing, marketing, supply, promotion, advertising, labeling, sale, and/or distribution of the CF-180AL Scopes into the stream of commerce, including, but not limited to, a duty to assure that the devices would not leave patients, such as the Plaintiff Stephen Collett, vulnerable to infection and illness as a result of device contamination.

66.    Defendant Olympus also had a duty to create, design, research, manufacture, test, market, supply, promote, advertise, label, sell, and/or distribute into the stream of commerce the CF-180AL Scope in such a way as to avoid harm to patients upon whom it was to be used, such as the Plaintiff Stephen Collett, and/or to refrain from such activities upon the knowledge and/or constructive knowledge that such an instrument posed an unreasonable risk of harm to patients upon whom it was to be used, such as the Plaintiff Stephen Collett.

67.    Defendant Olympus breached the aforementioned duties by failing to exercise ordinary care in creating, designing, researching, manufacturing, marketing, supplying, promoting, labeling, advertising, packaging, selling, testing, quality assurance, quality control and/or distributing the CF-180AL Scope into interstate commerce in that Defendant Olympus knew or should have known that using the CF-180AL Scopes created a high risk of unreasonable, dangerous side effects, in that they allowed for microbial contamination and the spread of these microbial contaminants from one patient to another.

68.    Defendant Olympus violated the aforementioned duties in a myriad of ways, including, but not limited to, the following:

(a)     Manufacturing, producing, promoting, formulating, creating, and/or designing the CF-180AL Scope without testing it;

(b)     Manufacturing, producing, promoting, formulating, creating, and/or designing the CF-180AL Scope without adequately and thoroughly testing it;

(c)     Not conducting sufficient testing programs to determine whether or not the CF-180AL Scope was safe for use, in that Defendant Olympus knew or should have known that the CF-180AL Scope was unsafe and unfit for use by reason of the dangers to its users;

(d)     Selling the CF-180AL Scope without making proper and sufficient tests to determine the dangers to its users;

(e)     Failing to adequately and correctly warn the Plaintiff, Dr. Williams, the Athens Gastroenterology Association, Plaintiff's other healthcare providers, the public, the medical community and/or the FDA of the dangers of the CF-180AL Scope;

(f)     Failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with, and more particularly, use the CF-180AL Scope;

(g)     Failing to provide adequate instructions regarding the reprocessing of the CF-180AL Scope to be performed by users, handlers, and persons who

would reasonably and foreseeably come into contact with the CF-180AL Scope;

(h)     Promoting, marketing, advertising and/or recommending the use of the CF-180AL Scope without sufficient knowledge as to its dangerous propensities, including, but not limited to, increased risk of microbial contamination and the spreading of these contaminants from one patient to another;

(i)     Representing that the CF-180AL Scope was safe for use for its intended purpose, when, in fact, it was unsafe in that it allowed for microbial contamination and the spread of these contaminants from one patient to another;

(j)     Designing the CF-180AL Scope in a manner which was dangerous to its users, such that it allowed for microbial contamination and the spread of contaminants from one patient to another;

(k)     Manufacturing the CF-180AL Scope in a manner which was dangerous to its users, such that it allowed for microbial contamination and the spread of contaminants from one patient to another;

(l)     Producing the CF-180AL Scope in a manner which was dangerous to its users, such that it allowed for microbial contamination and the spread of contaminants from one patient to another;

(m)     Assembling the CF-180AL Scope in a manner which was dangerous to its users, such that it allowed for microbial contamination and the spread of contaminants from one patient to another;

(n)     Concealing information concerning FDA regulations and warnings from the Plaintiff Stephen Collett and his healthcare providers in knowing that the CF-180AL Scope was unsafe, dangerous, and/or non-conforming with FDA regulations;

(o)     Improperly concealing from and/or misrepresenting information to the Plaintiff Stephen Collett, his healthcare professionals, and/or the FDA, concerning the defects and severity of risks and dangers of the CF-180AL Scope;

(p)     Failing to respond promptly and adequately to testing indicating that the CF-180AL Scope was unsafe for use as directed in the manufacturers' instructions and/or reprocessing instructions, such that it allowed for microbial contamination and the spread of contaminants from one patient to another;

(q)     Failing to conduct post-market surveillance and/or adequate post-market surveillance of the CF-180AL Scope;

(r)     Failing to act promptly to revise the manufacturers' instructions and reprocessing instructions for the CF-180AL Scopes upon learning of their deficiencies;

(s)     Failing to promptly adjust the design and manufacture of the CF-180AL Scope upon learning of its defects;

(t)     Manufacturing, marketing, advertising, supplying, promoting, selling, and/or distributing the CF-180AL Scope given its knowledge of its defects; and

(u)     Disregarding the safety and welfare of patients, including Plaintiff Stephen Collett, by failing to withdraw the CF-180AL Scope from the market, revise the device's design, revise the device's reprocessing instructions, and/or otherwise restrict use of the device.

69.     Before and at the time the CF-180AL Scope was used in Plaintiff's Procedure, Defendant Olympus knew or should have known that the CF-180AL Scope caused unreasonably dangerous side effects, in that it allowed for microbial contamination and the spread of these contaminants from one patient to another.

70.     Despite the fact that Defendant Olympus knew or should have known before and at the time the CF-180AL Scope was used in Plaintiff's procedure that the CF-180AL Scope caused unreasonably dangerous side effects, in that it allowed for microbial contamination and the spread of these contaminants from one patient to another, Defendant Olympus continued to manufacture, market, promote, advertise, distribute and/or sell its CF-180AL Scopes to healthcare facilities, including Athens Gastroenterology Associations, for use in endoscopic procedures.

71.     Defendant Olympus knew or should have known that patients, such as the Plaintiff Stephen Collett, would foreseeably suffer injury as a result of its failure to exercise ordinary care, as set forth herein.

72.     Because of Defendant Olympus's failure to exercise ordinary care, as set forth herein, a defective CF-180AL Scope was used in Plaintiff Stephen Collett's procedure and microbial contaminants were transferred to him from the CF-180AL Scope, which later resulted in an HIV infection.

73.     Defendant Olympus's negligence was the proximate, legally attributable cause of the injuries Plaintiff has suffered and continues to suffer.

74.     As a direct and proximate result of the foregoing acts and omission of Defendant Olympus, Plaintiff Stephen Collett was caused to suffer severe and personal injuries, including, but not limited to, HIV, AIDS, and diminished enjoyment of life, as well as the need for lifelong medical treatment.

75.     If not for Defendant Olympus's acts and omissions, described herein, Plaintiffs would not have sustained HIV and all other injuries associated therewith.

76.     It was foreseeable to Defendant Olympus that its acts and omissions would cause harm to patients undergoing procedures in which said CF-180AL Scopes were used.

77.     It was foreseeable to Defendant Olympus that the use of the CF-180AL Scope in Plaintiff Stephen Collett's procedure would cause the injuries alleged herein.

78.     By reason of the foregoing, Plaintiffs have been damaged.

## SECOND CAUSE OF ACTION AS AGAINST DEFENDANT ASP
## (NEGLIGENCE)

79.     Plaintiff repeats, reiterates, and realleges each and every allegation in Paragraphs 1 through 78, with the same force and effect as if more fully set forth herein.

80.     At all relevant times, Defendant ASP caused CIDEX, to be created, researched, tested, designed, manufactured, advertised, promoted, marketed, labeled, supplied, sold and/or distributed and/or was responsible for the creation, research, testing, design, manufacture, advertisement, promotion, marketing, labeling, supplying, sales and/or distribution.

81.     At all relevant times, Defendant ASP caused the CIDEX Scope that was used on the scope used in Plaintiff Stephen Collett's procedure to be created, researched, designed, manufactured, advertised, promoted, marketed, labeled, supplied, sold and/or distributed and/or was responsible for its creation, research, testing, design, manufacture, advertisement, promotion, marketing, labeling, supplying, sales and/or distribution.

82.     The CIDEX used in Plaintiff Stephen Collett's procedure was expected to, and did, reach the Athens Gastroenterology Association without substantial change to the condition in which it was designed, manufactured, promoted, advertised, labeled, supplied, sold, and/or distributed by Defendant ASP.

83.     When the CIDEX that was used in Plaintiff Stephen Collett's procedure, it had not been substantially changed in design, manufacture or labeling from when Athens Gastroenterology Association had first received it from Defendant ASP until the time it was used in Plaintiff's procedure.

84.     Defendant ASP had a duty to exercise reasonable care in the creation, design, research, manufacture, testing, marketing, supply, promotion, advertising, labeling, sale, and/or

distribution of the CIDEX into the stream of commerce, including, but not limited to, a duty to assure that the material would not leave patients, such as the Plaintiff Stephen Collett, vulnerable to infection and illness as a result of device contamination.

85.   Defendant ASP also had a duty to create, design, research, manufacture, test, market, supply, promote, advertise, label, sell, and/or distribute into the stream of commerce the CIDEX in such a way as to avoid harm to patients upon whom it was to be used, such as the Plaintiff Stephen Collett, and/or to refrain from such activities upon the knowledge and/or constructive knowledge that such a product posed an unreasonable risk of harm to patients upon whom it was to be used, such as the Plaintiff Stephen Collett.

86.   Defendant ASP breached the aforementioned duties by failing to exercise ordinary care in creating, designing, researching, manufacturing, marketing, supplying, promoting, labeling, advertising, packaging, selling, testing, quality assurance, quality control and/or distributing the CIDEX into interstate commerce in that Defendant ASP knew or should have known that using the CIDEX created a high risk of unreasonable, dangerous side effects, in that it allowed for microbial contamination and the spread of these microbial contaminants from one patient to another.

87.   Defendant ASP violated the aforementioned duties in a myriad of ways, including, but not limited to, the following:

(a)   Manufacturing, producing, promoting, formulating, creating, and/or designing the CIDEX without testing it;

(b)   Manufacturing, producing, promoting, formulating, creating, and/or designing the CIDEX Scope without adequately and thoroughly testing it;

(c)     Not conducting sufficient testing programs to determine whether or not the CIDEX was safe for use, in that Defendant ASP knew or should have known that CIDEX was unsafe and unfit for use by reason of the dangers to its users;

(d)     Selling CIDEX without making proper and sufficient tests to determine the dangers to its users;

(e)     Failing to adequately and correctly warn the Plaintiff, Dr. Williams, the Athens Gastroenterology Association, Plaintiff's other healthcare providers, the public, the medical community and/or the FDA of the dangers of CIDEX;

(f)     Failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with, and more particularly, use CIDEX;

(g)     Failing to provide adequate instructions regarding the reprocessing of the colonoscopes with CIDEX to be performed by users, handlers, and persons who would reasonably and foreseeably come into contact with the CIDEX;

(h)     Promoting, marketing, advertising and/or recommending the use of CIDEX without sufficient knowledge as to its dangerous propensities, including, but not limited to, increased risk of microbial contamination and the spreading of these contaminants from one patient to another;

(i) Representing that the CIDEX was safe for use for its intended purpose, when, in fact, it was unsafe in that it allowed for microbial contamination and the spread of these contaminants from one patient to another;

(j) Designing CIDEX in a manner which was dangerous to its users, such that it allowed for microbial contamination and the spread of contaminants from one patient to another;

(k) Manufacturing CIDEX in a manner which was dangerous to its users, such that it allowed for microbial contamination and the spread of contaminants from one patient to another;

(l) Producing CIDEX in a manner which was dangerous to its users, such that it allowed for microbial contamination and the spread of contaminants from one patient to another;

(m) Concealing information concerning FDA regulations and warnings from the Plaintiff Stephen Collett and his healthcare providers in knowing that CIDEX was unsafe, dangerous, and/or non-conforming with FDA regulations;

(n) Improperly concealing from and/or misrepresenting information to the Plaintiff Stephen Collett, his healthcare professionals, and/or the FDA, concerning the defects and severity of risks and dangers of CIDEX;

(o) Failing to respond promptly and adequately to testing indicating that the CIDEX was unsafe for use as directed in the manufacturers' instructions and/or reprocessing instructions, such that it allowed for microbial

contamination and the spread of contaminants from one patient to another;

(p)   Failing to conduct post-market surveillance and/or adequate post-market surveillance of CIDEX;

(q)   Failing to act promptly to revise the manufacturers' instructions and reprocessing instructions for colonoscopes using CIDEX upon learning of their deficiencies;

(r)   Failing to promptly adjust the design and manufacture of the CIDEX upon learning of its defects;

(s)   Continuing manufacturing, marketing, advertising, supplying, promoting, selling, and/or distributing the CIDEX given the knowledge of its defects; and

(t)   Disregarding the safety and welfare of patients, including Plaintiff Stephen Collett, by failing to withdraw CIDEX from the market, revise the product, revise the usage instructions, and/or otherwise restrict use of the product.

88.   Before and at the time the CIDEX was used in Plaintiff's Procedure, Defendant ASP knew or should have known that CIDEX caused unreasonably dangerous side effects, in that it allowed for microbial contamination and the spread of these contaminants from one patient to another.

89.   Despite the fact that Defendant ASP knew or should have known before and at the time the CIDEX was used in Plaintiff Stephen Collett's procedure that the CIDEX caused

unreasonably dangerous side effects, in that it allowed for microbial contamination and the spread of these contaminants from one patient to another, Defendant ASP continued to manufacture, market, promote, advertise, distribute and/or sell CIDEX to healthcare facilities, including Athens Gastroenterology Associations, for use in endoscopic procedures.

90.     Defendant ASP knew or should have known that patients, such as the Plaintiff Stephen Collett, would foreseeably suffer injury as a result of its failure to exercise ordinary care, as set forth herein.

91.     Because of Defendant ASP's failure to exercise ordinary care, as set forth herein, CIDEX was used in Plaintiff Stephen Collett's procedure and microbial contaminants were transferred to him from the CF-180AL Scope, which later resulted in his HIV infection.

92.     Defendant ASP's negligence was the proximate, legally attributable cause of the injuries Plaintiffs have suffered and continue to suffer.

93.     As a direct and proximate result of the foregoing acts and omission of Defendant ASP, Plaintiffs Stephen Collett and Felicity Collett were caused to suffer severe and personal injuries, including, but not limited to, HIV, AIDS, and diminished enjoyment of life, as well as the need for lifelong medical treatment.

94.     If not for Defendant ASP's acts and omissions, described herein, Plaintiffs would not have sustained the HIV infection and all other injuries associated therewith.

95.     It was foreseeable to Defendant ASP that its acts and omissions would cause harm to patients undergoing procedures in which said CIDEX was used.

96.     It was foreseeable to Defendant ASP that the use of CIDEX in Plaintiff Stephen Collett's procedure would cause the injuries alleged herein.

97.     As a direct result, Plaintiffs have been damaged.

## THIRD CAUSE OF ACTION AS AGAINST DEFENDANT OLYMPUS
## (STRICT PRODUCTS LIABILITY - DESIGN DEFECT)

98.     Plaintiff repeats, reiterates, and realleges each and every allegation in Paragraphs 1 through 97, with the same force and effect as if more fully set forth herein.

99.     At all relevant times, the CF-180AL Scopes, including the one used on the Plaintiff during his procedure, were unsafe, defective, and inherently dangerous as designed, thus rendering them dangerous to all patients, and particularly, the Plaintiff Stephen Collett .

100.    At the time of the Plaintiff's exposure to the defectively designed CF-180AL Scope during his procedure, the CF-180AL Scope was being used for the purposes and in a manner normally intended.

101.    The Plaintiff, Dr. Williams, Athens Gastroenterology Association and/or her other healthcare providers could not, by the exercise of reasonable care, have discovered the CF-180AL Scope's design defects herein mentioned and perceived its danger.

102.    At all relevant times, Defendant Olympus caused all endoscopes, including the CF-180AL Scopes, to be created, researched, designed, advertised, promoted, marketed and/or labeled and/or was responsible for their creation, research, design, advertisement, promotion, marketing and labeling.

103.    At all relevant times, Defendant Olympus CORPORATION caused the CF-180AL Scope that was used in Plaintiff's procedure to be created, researched, designed, advertised, promoted, marketed, and labeled and/or was responsible for its creation, research, design, advertisement, promotion, marketing and labeling.

104.    The CF-180AL Scope used in the Plaintiff's procedure was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product until it ultimately reached Athens Gastroenterology Association without any change in the manner in which it was designed, produced, manufactured, advertised and/or labeled by Defendant Olympus.

105.    The CF-180AL Scope used in the procedure performed on Plaintiff Stephen Collett had not been substantially changed, altered or modified in design, manufacture or labeling from when it was first received by Athens Gastroenterology Association from Defendant Olympus through the date it was used during Plaintiff's procedure.

106.    The CF-180AL Scope created, designed, researched, advertised, promoted, marketed, and/or labeled by Defendant Olympus was defective in design or formulation in that its foreseeable risks, including, but not limited to, the risk of microbial contamination and the spread of infection from one patient to another, exceeded its benefits or utility.

107.    The CF-180AL Scope created, designed, researched, advertised, promoted, marketed and/or labeled by Defendant Olympus was defective in design and/or formulation, in that Defendant Olympus exposed patients, particularly the Plaintiff Stephen Collett, to a greater risk of danger than that to which they should have been exposed.

108.    The CF-180AL Scope created, designed, researched, advertised, promoted, marketed and/or labeled by Defendant Olympus was defective in design and/or formulation, in that it was unreasonably dangerous due to, among other things, its increased risk of microbial contamination and the spread of infection from one patient to another, and it was more dangerous than an ordinary consumer would expect.

109.    The CF-180AL Scope created, designed, researched, advertised, promoted, marketed and/or labeled by Defendant Olympus was defective in design or formulation in that it was not reasonably fit, suitable, or safe for its intended purpose because its design caused it to trap contaminants from one patient and spread them to other patients subsequently exposed to the CF-180AL Scope.

110.    The CF-180AL Scope created, designed, researched, advertised, promoted, marketed and/or labeled by Defendant Olympus was defective in design in that it failed to warn of the increased risk of microbial contamination and the spread of infection from one patient to another, and it was more dangerous than an ordinary consumer would expect.

111.    At all times herein mentioned, the CF-180AL Scope was defectively designed and unsafe, and Defendant Olympus knew or had reason to know that the CF-180AL Scope was defectively designed and unsafe, especially when used in the form and manner as provided and/or directed by the Defendant Olympus.

112.    Defendant Olympus knew, or should have known, that at all times herein mentioned the CF-180AL Scope was defectively designed, in that it allowed for microbial contamination and the spread of infection from one patient to another patient, and was and is inherently dangerous and unsafe.

113.    Defendant Olympus with its knowledge of the design defects associated with the CF-180AL Scopes voluntarily designed and/or continued with the design of the CF-180AL Scopes in a dangerous condition for use by healthcare providers in their patients, and particularly by Dr. Williams in the Plaintiff Stephen Collett.

114.    Defendant Olympus with its knowledge of the design defects associated with the CF-180AL Scopes failed to inform healthcare facilities, physicians, the medical community and/or the FDA of the CF-180AL Scopes' design defects.

115.    Defendant Olympus with its knowledge of the design defects associated with the CF-180AL Scopes failed to inform Plaintiff, Athens Gastroenterology Association, Dr. Williams and/or his other healthcare providers of the CF-180AL Scopes' design defects.

116.    At all relevant times, a technologically feasible alternative design that was a marketable reality was available for Defendant Olympus to implement that would have made the CF-180AL Scope safer than the design of the CF-180AL Scope that was used in Plaintiff's procedure, and this design would have been as equally efficacious as the CF-180AL Scope that was used in Plaintiff's procedure.

117.    Had Defendant Olympus implemented the aforementioned design that was feasible and a marketable reality, the foreseeable risks of harm presented by the CF-180AL Scope that it did adopt would have been reduced.

118.    At all relevant times, the defectively designed CF-180AL Scopes, including the CF-180AL Scope used in the procedure performed on the Plaintiff Stephen Collett created an unreasonable risk of harm to patients, including the Plaintiff, and Defendant Olympus is therefore strictly liable in tort for the injuries he sustained.

119.    The defective design of the CF-180AL Scope that was used in Plaintiff Stephen Collett's procedure caused microbial contaminants that were retained in the CF-180AL Scope to be transferred to him from the CF-180AL Scope during his procedure, which resulted in him contracting HIV.

120.    As a direct and proximate result of the defective design of the CF-180AL Scope used in his procedure, Plaintiff Stephen Collett was caused to suffer severe and personal injuries, including, but not limited to, HIV, AIDS, and diminished enjoyment of life, as well as the need for lifelong medical treatment.

121.    If not for the dangerously defective design of the CF-180AL Scope, described herein, Plaintiff would not have been harmed and would not have sustained HIV, AIDS, and all other injuries associated therewith.

122.    The defectively designed CF-180AL Scope that was used in the procedure performed on Plaintiff Stephen Collett was the direct and proximate cause of Plaintiff's injuries as set forth herein.

123.    The defective design of the CF-180AL Scope was a substantial factor in causing Plaintiff Stephen Collett's injuries.

124.    As a direct result of Defendant's actions, Plaintiffs have been damaged.

### FOURTH CAUSE OF ACTION AS AGAINST DEFENDANT ASP
### (STRICT PRODUCTS LIABILITY - DESIGN DEFECT)

125.    Plaintiff repeats, reiterates, and realleges each and every allegation in Paragraphs 1 through 124, with the same force and effect as if more fully set forth herein.

126.    At all relevant times, the CIDEX, including the product used on the scope used on Plaintiff Stephen Collett during his procedure, was unsafe, defective, and inherently dangerous as designed, thus rendering it dangerous to all patients, and particularly, the Plaintiff Stephen Collett .

127.    At the time of the Plaintiff's exposure to the CF-180AL Scope during his procedure, the CIDEX was being used for the purposes and in a manner normally intended.

128.    The Plaintiff, Dr. Williams, Athens Gastroenterology Association and/or other healthcare providers could not, by the exercise of reasonable care, have discovered the CIDEX design defects herein mentioned and perceived its danger.

129.    At all relevant times, and prior to Plaintiff Stephen Collett's procedure, Defendant ASP caused CIDEX to be created, researched, designed, advertised, promoted, marketed and/or labeled and/or was responsible for its creation, research, design, advertisement, promotion, marketing and labeling.

130.    At all relevant times, Defendant ASP caused the CIDEX that was used in Plaintiff's procedure to be created, researched, designed, advertised, promoted, marketed, and labeled and/or was responsible for its creation, research, design, advertisement, promotion, marketing and labeling.

131.    The CIDEX used in the Plaintiff's procedure was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product until it ultimately reached Athens Gastroenterology Association without any change in the manner in which it was designed, produced, manufactured, advertised and/or labeled by Defendant ASP.

132.    The CIDEX used in the procedure performed on Plaintiff Stephen Collett had not been substantially changed, altered or modified in design, manufacture or labeling from when it was first received by Athens Gastroenterology Association from Defendant ASP through the date it was used during Plaintiff's procedure.

133.    The CIDEX created, designed, researched, advertised, promoted, marketed, and/or labeled by Defendant ASP was defective in design or formulation in that its foreseeable

risks, including, but not limited to, the risk of microbial contamination and the spread of infection from one patient to another, exceeded its benefits or utility.

134.    The CIDEX created, designed, researched, advertised, promoted, marketed and/or labeled by Defendant ASP was defective in design and/or formulation, in that Defendant ASP exposed patients, particularly the Plaintiff Stephen Collett, to a greater risk of danger than that to which they should have been exposed.

135.    The CIDEX created, designed, researched, advertised, promoted, marketed and/or labeled by Defendant ASP was defective in design and/or formulation, in that it was unreasonably dangerous due to, among other things, its increased risk of microbial contamination and the spread of infection from one patient to another, and it was more dangerous than an ordinary consumer would expect.

136.    The CIDEX created, designed, researched, advertised, promoted, marketed and/or labeled by Defendant ASP was defective in design or formulation in that it was not reasonably fit, suitable, or safe for its intended purpose because its design does not kill trapped contaminants from one patient and spread them to other patients subsequently exposed to a colonoscope.

137.    The CIDEX created, designed, researched, advertised, promoted, marketed and/or labeled by Defendant ASP was defective in design in that it failed to warn of the increased risk of microbial contamination and the spread of infection from one patient to another, and it was more dangerous than an ordinary consumer would expect.

138.    At all times herein mentioned, the CIDEX was defectively designed and unsafe, and Defendant ASP knew or had reason to know that CIDEX was defectively designed and

unsafe, especially when used in the form and manner as provided and/or directed by the Defendant ASP.

139.    Defendant ASP knew, or should have known, that at all times herein mentioned CIDEX was defectively designed, in that it allowed for microbial contamination and the spread of infection from one patient to another patient, and was and is inherently dangerous and unsafe.

140.    Defendant ASP with its knowledge of the design defects associated with CIDEX voluntarily designed and/or continued marketing CIDEX in a dangerous condition for use by healthcare providers in their patients, and particularly by Dr. Williams in the Plaintiff Stephen Collett.

141.    Defendant ASP, with its knowledge of the design defects associated with CIDEX, failed to inform healthcare facilities, physicians, the medical community and/or the FDA of the CIDEX's design defects.

142.    Defendant ASP, with its knowledge of the design defects associated with the CIDEX, failed to inform Plaintiff, Athens Gastroenterology Association, Dr. Williams and/or his other healthcare providers of CIDEX's design defects.

143.    At all relevant times, a technologically feasible alternative design that was a marketable reality was available for Defendant ASP to implement that would have made the CIDEX safer than the design of the CIDEX that was used in Plaintiff's procedure, and this design would have been as equally efficacious as the CIDEX that was used in Plaintiff's procedure.

144.    Had Defendant ASP implemented the aforementioned design that was feasible and a marketable reality, the foreseeable risks of harm presented by CIDEX that it did adopt would have been reduced.

145.    At all relevant times, the defectively designed CIDEX created an unreasonable risk of harm to patients, including the Plaintiffs, and Defendant ASP is therefore strictly liable in tort for the injuries they have sustained.

146.    The defective design of the CIDEX that was used in Plaintiff Stephen Collett's procedure caused microbial contaminants that were retained in the CF-180AL Scope to be transferred to him from the CF-180AL Scope during his procedure, which resulted in him contracting HIV.

147.    As a direct and proximate result of the defective design of the CIDEX used in Plaintiff Stephen Collett's procedure, Plaintiffs Stephen Collett and Felicity Collett were caused to suffer severe and personal injuries, including, but not limited to, HIV, AIDS, and diminished enjoyment of life, as well as the need for lifelong medical treatment.

148.    If not for the dangerously defective design of the CIDEX, described herein, Plaintiffs would not have been harmed and would not have sustained HIV, AIDS, and all other injuries associated therewith.

149.    The defectively designed CIDEX that was used in the performed on the Plaintiff Stephen Collett was the direct and proximate cause of Plaintiffs' injuries as set forth herein.

150.    The defective design of the CIDEX was a substantial factor in causing Plaintiffs Stephen Collett's and Felicity Collett's injuries.

151.    By reason of the foregoing, Plaintiffs have been damaged.

### FIFTH CAUSE OF ACTION AS AGAINST DEFENDANT OLYMPUS
### (STRICT PRODUCTS LIABILITY - MANUFACTURING DEFECT)

152.   Plaintiffs repeat, reiterate, and reallege each and every allegation in Paragraphs 1 through 151, with the same force and effect as if more fully set forth herein.

153.   At all relevant times, the CF-180AL Scope used on Plaintiff Stephen Collett during his procedure was unsafe, defective, and inherently dangerous as manufactured.

154.   At the time of Plaintiff Stephen Collett's exposure to the defectively manufactured CF-180AL Scope during his procedure, the CF-180AL Scope was being used for the purposes and in a manner normally intended.

155.   The Plaintiff, Dr. Williams, Athens Gastroenterology Association, and/or his other healthcare providers could not, by the exercise of reasonable care, have discovered the CF-180AL Scope's manufacturing defects herein mentioned and/or perceived its danger.

156.   At all relevant times, Defendant Olympus caused the CF-180AL Scope that was used in the procedure performed on the Plaintiff Stephen Collett to be manufactured and produced and/or was responsible for its manufacture and production.

157.   The CF-180AL Scope used on the Plaintiff during his procedure was defective in that the CF-180AL Scope left the hands of Defendant Olympus in a defectively manufactured condition and was unreasonably dangerous to its intended users.

158.   The CF-180AL Scope used in the Plaintiff's procedure was expected to and did reach the intended, usual consumers, handlers, and persons coming into contact with said product until it ultimately reached Athens Gastroenterology Association without substantial change in the condition in which it was produced and/or manufactured by the Defendant Olympus.

159.    The CF-180AL Scope used in the procedure performed on the Plaintiff Stephen Collett had not been substantially changed, altered or modified from when Athens Gastroenterology Association had first received it from Defendant Olympus until the time his procedure was performed.

160.    At all relevant times, the defectively manufactured CF-180AL Scope used in the procedure performed on Plaintiff Stephen Collett created an unreasonable risk of harm to the Plaintiff, and Defendant Olympus is therefore strictly liable in tort for the injuries he sustained.

161.    By reason of the foregoing, Plaintiffs have been damaged.

### SIXTH CAUSE OF ACTION AS AGAINST DEFENDANT ASP
### (STRICT PRODUCTS LIABILITY - MANUFACTURING DEFECT)

162.    Plaintiffs repeat, reiterate, and reallege each and every allegation in Paragraphs 1 through 161, with the same force and effect as if more fully set forth herein.

163.    At all relevant times, the CIDEX used on the scope used on Plaintiff Stephen Collett during his procedure was unsafe, defective, and inherently dangerous as manufactured.

164.    At the time of Plaintiff Stephen Collett's exposure to the defectively manufactured CIDEX during his procedure, the CIDEX was being used for the purposes and in a manner normally intended.

165.    The Plaintiff, Dr. Williams, Athens Gastroenterology Association, and/or his other healthcare providers could not, by the exercise of reasonable care, have discovered the CIDEX's manufacturing defects herein mentioned and/or perceived its danger.

166.    At all relevant times, Defendant ASP caused the CIDEX that was used in the procedure performed on the Plaintiff Stephen Collett to be manufactured and produced and/or was responsible for its manufacture and production.

167.    The CIDEX used on the Plaintiff Stephen Collett during his procedure was defective in that the CIDEX left the hands of Defendant ASP in a defectively manufactured condition and was unreasonably dangerous to its intended users.

168.    The CIDEX used in the Plaintiff's procedure was expected to and did reach the intended, usual consumers, handlers, and persons coming into contact with said product until it ultimately reached Athens Gastroenterology Association without substantial change in the condition in which it was produced and/or manufactured by the Defendant ASP.

169.    The CIDEX used in the procedure performed on the Plaintiff Stephen Collett had not been substantially changed, altered or modified from when Athens Gastroenterology Association had first received it from Defendant ASP until the time his procedure was performed.

170.    At all relevant times, the defectively manufactured CIDEX used in the procedure performed on Plaintiff Stephen Collett created an unreasonable risk of harm to the Plaintiffs, and Defendant ASP is therefore strictly liable in tort for the injuries they sustained.

171.    By reason of the foregoing, Plaintiff has been damaged as against each and every Defendant in the sum of TEN MILLION DOLLARS ($10,000,000.00).

### SEVENTH CAUSE OF ACTION AS AGAINST DEFENDANT OLYMPUS (STRICT PRODUCTS LIABILITY - FAILURE TO WARN)

172.    Plaintiff repeats, reiterates, and realleges each and every allegation in Paragraphs 1 through 171, with the same force and effect as if more fully set forth herein.

173.    At all relevant times, the CF-180AL Scope used on the Plaintiff during his procedure was unsafe, defective, and inherently dangerous as advertised, marketed, promoted, packaged and/or labeled due to inadequate warnings and/or instructions.

174.     At all relevant times, the reprocessing instructions associated with the CF-180AL Scope used on the Plaintiff during his procedure were unsafe, defective, and inherently dangerous due to inadequate labels, warnings and/or instructions.

175.     At the time of the Plaintiff's exposure to the defectively marketed, promoted, packaged and/or labeled CF-180AL Scope during his procedure, the CF-180AL Scope was being used for the purposes and in a manner normally intended.

176.     The Plaintiff, Dr. Williams, Athens Gastroenterology Association, and/or his other healthcare providers could not, by the exercise of reasonable care, have discovered the defects in the CF-180AL Scope's marketing, promotion, packaging and/or labeling herein mentioned and perceived their danger.

177.     The Plaintiff, Dr. Williams, Athens Gastroenterology Association, and/or his other healthcare providers could not, by the exercise of reasonable care, have discovered the defects in the reprocessing instructions associated with the same CF-180AL Scope and perceived their danger.

178.     Upon information and belief, Plaintiff's healthcare providers, including, but not limited to, Dr. Williams and Athens Gastroenterology Association, would not have used the CF-180AL Scope in his procedure had they known of the risk of microbial contamination and the spread of these contaminants from one patient to another associated with the CF-180AL Scopes and/or its reprocessing instructions.

179.     Upon information and belief, had Plaintiff Stephen Collett's healthcare providers, including, but not limited to, Dr. Williams and Athens Gastroenterology Association, known of the risk of microbial contamination and the spread of these contaminants from one patient to

another associated with the CF-180AL Scopes and/or its reprocessing instructions, they would have warned the Plaintiff of said risk.

180.   Plaintiff would not have allowed Dr. Williams, Athens Gastroenterology Association, and/or any other healthcare provider to use the CF-180AL Scope in his procedure had he known of the risk of microbial contamination and the spread of these contaminants from one patient to another associated with the CF-180AL Scopes and/or its reprocessing instructions.

181.   At all relevant times, Defendant Olympus caused all endoscopes, including the CF-180AL Scopes and the one used in Plaintiff Stephen Collett's procedure, to be advertised, promoted, marketed and/or labeled and/or was responsible for their advertisement, promotion, marketing and labeling.

182.   At all relevant times, Defendant Olympus caused the reprocessing instructions associated with the CF-180AL Scopes, including the CF-180AL Scope used in Plaintiff Stephen Collett's procedure, to be drafted and/or created and/or was responsible for their drafting and/or creation.

183.   At all relevant times, Defendant Olympus had an ongoing duty to warn and/or advise the Plaintiff, Dr. Williams, Athens Gastroenterology Association, his other healthcare providers, the medical community and the general public in a timely manner of the risks associated with its CF-180AL Scopes, including, but not limited to, the risk of microbial contamination and the spread of these contaminants from one patient to another.

184.   At all relevant times, Defendant Olympus had an ongoing duty to warn and/or advise the Plaintiff, Dr. Williams, Athens Gastroenterology Association, his other healthcare providers, the medical community and the general public in a timely manner of that the

reprocessing instructions associated with the CF-180AL Scope were inadequate in that they created of serious and dangerous side effects, including, but not limited to, microbial contamination and the spread of these contaminants from one patient to another.

185.     Defendant Olympus knew or should have known that the CF-180AL Scope and/or its reprocessing instructions created a risk of serious and dangerous side effects, including, but not limited to, microbial contamination and the spread of these contaminants from one patient to another that could lead to severe and life-threatening personal injuries which are permanent and lasting in nature, and Defendant Olympus failed to adequately warn of said risk.

186.     Defendant Olympus knew or should have known that the CF-180AL Scope and/or its reprocessing instructions created a risk of serious and dangerous side effects, including, but not limited to, microbial contamination and the spread of these contaminants from one patient to another that could lead to severe and life-threatening personal injuries which are permanent and lasting in nature, and Defendant Olympus failed to provide adequate warnings and/or instructions regarding the appropriate method for reprocessing, cleaning and/or sanitizing the CF-180AL Scopes.

187.     Defendant Olympus knew or should have known it had failed to appropriately and/or adequately test the CF-180AL Scope and/or its reprocessing instructions for serious and dangerous side effects, including, but not limited to, microbial contamination and the spread of these contaminants from one patient to another that could lead to severe and life-threatening personal injuries which are permanent and lasting in nature, and Defendant Olympus failed to warn healthcare providers of the product's inadequate testing.

188.     After Defendant Olympus knew or should have known that the CF-180AL Scope and/or its reprocessing instructions created a risk of serious and dangerous side effects, including, but not limited to, microbial contamination and the spread of these contaminants from one patient to another that could lead to severe and life-threatening personal injuries which are permanent and lasting in nature, Defendant Olympus continued to improperly advertise, market and/or promote the CF-180AL Scopes.

189.     Defendant Olympus failed to fulfill the aforementioned duty to warn and/or advise for years after learning of the risks associated with the CF-180AL Scopes in that it, among other things, failed to inform the Plaintiff, Dr. Williams, Athens Gastroenterology Association, his other healthcare providers, the medical community and/or the general public of the risk of microbial contamination and the spread of these contaminant from one patient to another associated with their CF-180AL Scopes, and failed to adequately and appropriately inform Dr. Williams, Athens Gastroenterology Association, Plaintiff Stephen Collett's other healthcare providers, the medical community and/or the general public of the accurate and appropriate method for reprocessing their CF-180AL Scopes.

190.     The failure of Defendant Olympus to promptly and adequately warn the Plaintiff, Dr. Williams, Athens Gastroenterology Association, his other healthcare providers, the medical community and/or the general public of the risk of microbial contamination and the spread of these contaminants from one patient to another associated with the CF-180AL Scopes and/or its reprocessing instructions prevented Plaintiff Stephen Collett, Dr. Williams, Athens Gastroenterology Association, and/or his other healthcare providers from making an informed choice regarding the use of this instrument in his procedure.

191.     The failure of Defendant Olympus to promptly and adequately warn Athens Gastroenterology Association of the risks associated with the CF-180AL Scopes and/or its reprocessing instruction also prevented Athens Gastroenterology Association from making an informed choice regarding the purchase and/or retention of the CF-180AL Scope as well as regarding the manner in which the instrument was reprocessed.

192.     Upon information and belief, had Defendant Olympus promptly and adequately warned of the aforementioned risks, such warnings would have been heeded by Athens Gastroenterology Association in that the clinic would have stopped supplying CF-180AL Scopes for use by physicians, instead providing them with safer endoscope models, and/or would have reevaluated their reprocessing protocol for the CF-180AL Scope.

193.     Had Plaintiff been warned by Defendant Olympus of the aforementioned risk, he would have sought alternate treatment that did not carry the risk of microbial contamination and the spread of these contaminants from one patient to another, such as the use of a different colonoscope, and, thus, would have avoided the aforesaid injuries.

194.     Due to Defendant Olympus's failure to warn, a defectively marketed, packaged and labeled CF-180AL Scope was used in Plaintiff Stephen Collett's procedure and caused microbial contaminants to be retained in the CF-180AL Scope and then transferred to him during his procedure, which later resulted in HIV infection and AIDS.

195.     Due to Defendant Olympus's failure to warn of the risk associated with their CF-180AL Scope and/or its reprocessing instructions, Defendant Olympus is strictly liable in tort to Plaintiff Stephen Collett.

196.    At all relevant times, the defectively marketed, packaged and labeled CF-180AL Scope used in the procedure performed on the Plaintiff Stephen Collett created an unreasonable risk of harm to the Plaintiff, and Defendant Olympus is therefore strictly liable in tort for the injuries he sustained.

197.    Defendant Olympus's failure to warn of the risks associated with the CF-180AL Scope and/or its reprocessing instructions is the direct and proximate cause of Plaintiff Stephen Collett's injuries.

198.    As a direct and proximate result of the defectively marketed, packaged and labeled CF-180AL Scope used in his procedure, the Plaintiff was caused to suffer severe and personal injuries, including, but not limited to, HIV, AIDS, and diminished enjoyment of life, as well as the need for lifelong medical monitoring.

199.    The defectively marketed and packaged CF-180AL Scope that was used in the procedure performed on the Plaintiff Stephen Collett was the direct and proximate cause of Plaintiff's injuries as set forth herein.

200.    The defectively marketed and packaged CF-180AL Scope that was used in the procedure performed on the Plaintiff Stephen Collett was a substantial factor in causing Plaintiffs' injuries.

201.    By reason of the foregoing, Plaintiffs have been damaged.

### EIGHTH CAUSE OF ACTION AS AGAINST DEFENDANT ASP
### (STRICT PRODUCTS LIABILITY - FAILURE TO WARN)

202.    Plaintiff repeats, reiterates, and realleges each and every allegation in Paragraphs 1 through 201, with the same force and effect as if more fully set forth herein.

203.    At all relevant times, the CIDEX used on the Plaintiff during his procedure was unsafe, defective, and inherently dangerous as advertised, marketed, promoted, packaged and/or labeled due to inadequate warnings and/or instructions.

204.    At all relevant times, the reprocessing instructions associated with the CIDEX used on the Plaintiff during his procedure were unsafe, defective, and inherently dangerous due to inadequate labels, warnings and/or instructions.

205.    At the time of the Plaintiff's exposure to the infected scope during his procedure, the CIDEX was being used for the purposes and in a manner normally intended.

206.    The Plaintiff, Dr. Williams, Athens Gastroenterology Association, and/or his other healthcare providers could not, by the exercise of reasonable care, have discovered the defects in CIDEX's marketing, promotion, packaging and/or labeling herein mentioned and perceived their danger.

207.    The Plaintiff, Dr. Williams, Athens Gastroenterology Association, and/or his other healthcare providers could not, by the exercise of reasonable care, have discovered the defects in the reprocessing instructions associated with CIDEX and perceived their danger.

208.    Upon information and belief, Plaintiff's healthcare providers, including, but not limited to, Dr. Williams and Athens Gastroenterology Association, would not have used CIDEX in his procedure had they known of the risk of microbial contamination and the spread of these contaminants from one patient to another associated with the colonoscopes treated with CIDEX and/or its reprocessing instructions.

209.    Upon information and belief, had Plaintiff Stephen Collett's healthcare providers, including, but not limited to, Dr. Williams and Athens Gastroenterology Association, known of

the risk of microbial contamination and the spread of these contaminants from one patient to another associated with the use of CIDEX and/or its reprocessing instructions, they would have warned the Plaintiff of said risk.

210.   Plaintiff would not have allowed Dr. Williams, Athens Gastroenterology Association, and/or any other healthcare provider to use the colonoscope in his procedure had he known of the risk of microbial contamination and the spread of these contaminants from one patient to another associated with CIDEX and/or its reprocessing instructions.

211.   At all relevant times, Defendant ASP caused CIDEX to be advertised, promoted, marketed and/or labeled and/or was responsible for its advertisement, promotion, marketing and labeling.

212.   At all relevant times, Defendant ASP caused the reprocessing instructions associated with CIDEX, including the CF-180AL Scope used in Plaintiff Stephen Collett's procedure, to be drafted and/or created and/or was responsible for their drafting and/or creation.

213.   At all relevant times, Defendant ASP had an ongoing duty to warn and/or advise the Plaintiff, Dr. Williams, Athens Gastroenterology Association, his other healthcare providers, the medical community and the general public in a timely manner of the risks associated with CIDEX, including, but not limited to, the risk of microbial contamination and the spread of these contaminants from one patient to another.

214.   At all relevant times, Defendant ASP had an ongoing duty to warn and/or advise the Plaintiff, Dr. Williams, Athens Gastroenterology Association, his other healthcare providers, the medical community and the general public in a timely manner of that the reprocessing instructions associated with the CIDEX Scope were inadequate in that they created of serious

and dangerous side effects, including, but not limited to, microbial contamination and the spread of these contaminants from one patient to another.

215.    Defendant ASP knew or should have known that CIDEX and/or its reprocessing instructions created a risk of serious and dangerous side effects, including, but not limited to, microbial contamination and the spread of these contaminants from one patient to another that could lead to severe and life-threatening personal injuries which are permanent and lasting in nature, and Defendant ASP failed to adequately warn of said risk.

216.    Defendant ASP knew or should have known that CIDEX and/or its reprocessing instructions created a risk of serious and dangerous side effects, including, but not limited to, microbial contamination and the spread of these contaminants from one patient to another that could lead to severe and life-threatening personal injuries which are permanent and lasting in nature, and Defendant ASP failed to provide adequate warnings and/or instructions regarding the appropriate method for reprocessing, cleaning and/or sanitizing colonoscopes using CIDEX.

217.    Defendant ASP knew or should have known it had failed to appropriately and/or adequately test CIDEX and/or its reprocessing instructions for serious and dangerous side effects, including, but not limited to, microbial contamination and the spread of these contaminants from one patient to another that could lead to severe and life-threatening personal injuries which are permanent and lasting in nature, and Defendant ASP failed to warn healthcare providers of the product's inadequate testing.

218.    After Defendant ASP knew or should have known that CIDEX and/or its reprocessing instructions created a risk of serious and dangerous side effects, including, but not limited to, microbial contamination and the spread of these contaminants from one patient to

another that could lead to severe and life-threatening personal injuries which are permanent and lasting in nature, Defendant ASP continued to improperly advertise, market and/or promote CIDEX.

219.     Defendant ASP failed to fulfill the aforementioned duty to warn and/or advise for years after learning of the risks associated with CIDEX in that it, among other things, failed to inform the Plaintiff, Dr. Williams, Athens Gastroenterology Association, his other healthcare providers, the medical community and/or the general public of the risk of microbial contamination and the spread of these contaminant from one patient to another associated with CIDEX, and failed to adequately and appropriately inform Dr. Williams, Athens Gastroenterology Association, Plaintiff Stephen Collett's other healthcare providers, the medical community and/or the general public of the accurate and appropriate method for reprocessing colonoscopes using CIDEX.

220.     The failure of Defendant ASP to promptly and adequately warn the Plaintiff, Dr. Williams, Athens Gastroenterology Association, his other healthcare providers, the medical community and/or the general public of the risk of microbial contamination and the spread of these contaminants from one patient to another associated with CIDEX and/or its reprocessing instructions prevented Plaintiff Stephen Collett, Dr. Williams, Athens Gastroenterology Association, and/or his other healthcare providers from making an informed choice regarding the use of this instrument in his procedure.

221.     The failure of Defendant ASP to promptly and adequately warn Athens Gastroenterology Association of the risks associated with CIDEX and/or its reprocessing instruction also prevented Athens Gastroenterology Association from making an informed choice

regarding the purchase of CIDEX as well as regarding the manner in which instruments are reprocessed.

222.    Upon information and belief, had Defendant ASP promptly and adequately warned of the aforementioned risks, such warnings would have been heeded by Athens Gastroenterology Association in that the clinic would have stopped supplying CIDEX for use by physicians, instead providing them with safer endoscope models, and/or would have reevaluated their reprocessing protocol for colonoscopes.

223.    Had Plaintiff been warned by Defendant ASP of the aforementioned risk, he would have sought alternate treatment that did not carry the risk of microbial contamination and the spread of these contaminants from one patient to another, such as the use of a different colonoscope, and, thus, would have avoided the aforesaid injuries.

224.    Due to Defendant ASP'S failure to warn, a defectively marketed, packaged and CIDEX used on the colonoscope used in Plaintiff Stephen Collett's procedure and caused microbial contaminants to be retained in the colonoscope and then transferred to him during his procedure, which later resulted in HIV infection and AIDS.

225.    Due to Defendant ASP's failure to warn of the risk associated with CIDEX and/or its reprocessing instructions, Defendant ASP is strictly liable in tort to Plaintiffs Stephen Collett and Felicity Collett.

226.    At all relevant times, the defectively marketed, packaged and labeled CIDEX used on the colonoscope used in the procedure performed on the Plaintiff Stephen Collett created an unreasonable risk of harm to the Plaintiffs, and Defendant ASP is therefore strictly liable in tort for the injuries they sustained.

227.    Defendant ASP's failure to warn of the risks associated with CIDEX and/or its reprocessing instructions is the direct and proximate cause of Plaintiffs Stephen Collett's and Felicity Collett's injuries.

228.    As a direct and proximate result of the defectively marketed, packaged and labeled CIDEX used on the colonoscope used in his procedure, the Plaintiffs were caused to suffer severe and personal injuries, including, but not limited to, HIV, AIDS, and diminished enjoyment of life, as well as the need for lifelong medical monitoring.

229.    The defectively marketed and packaged CIDEX that was used on the colonoscope used in the procedure performed on the Plaintiff Stephen Collett was the direct and proximate cause of Plaintiffs' injuries as set forth herein.

230.    The defectively marketed and packaged CIDEX that was used on the colonoscope used in the procedure performed on the Plaintiff Stephen Collett was a substantial factor in causing Plaintiffs' injuries.

231.    By reason of the foregoing, Plaintiffs have been damaged.

## TENTH CAUSE OF ACTION AS AGAINST DEFENDANT OLYMPUS
## (FRAUDULENT MISREPRESENTATION/DECEIT)

232.    Plaintiffs repeat, reiterate, and reallege each and every allegation in Paragraphs 1 through 231, with the same force and effect as if more fully set forth herein.

233.    Defendant Olympus had a duty when disseminating information to the public, including the Plaintiff Stephen Collett and his healthcare providers, to disseminate truthful information and a parallel duty not to deceive the public, including the Plaintiff and his healthcare providers.

234.    The information distributed to the public, including the Plaintiff and his healthcare providers, by Defendant Olympus through its websites, product brochures, reprocessing instructions, and/or sales representatives contained material representations of fact and/or omissions.

235.    Specifically, in the product brochures that were distributed to Athens Gastroenterology Association by OAI sales representatives prior to October 2011, which are in the possession of Defendant Olympus, Defendant Olympus represented that the CF-180AL was a superior instrument to its competitors.

236.    Specifically, as to the reprocessing instructions that were used with respect to the CF-180AL Scope used in Plaintiff's Procedure, the entire set of instructions were representations made by Defendant Olympus to the medical personnel at Athens Gastroenterology Association that if they followed the instructions, the CF-180AL Scope would be effectively cleaned and sanitized.

237.    The aforementioned representations distributed to the Plaintiff's healthcare providers, including, but not limited to, Dr. Williams and Athens Gastroenterology Association, by Defendant Olympus intentionally included representations that the CF-180AL Scope was safe and effective for its intended use as a colonoscope.

238.    The aforementioned representations distributed to the Plaintiff's healthcare providers, including, but not limited to, Dr. Williams and Athens Gastroenterology Association, by Defendant Olympus included representations that the CF-180AL Scope was superior to other endoscopes on the market.

239. The aforementioned representations distributed to the Plaintiff's healthcare providers, including, but not limited to, Dr. Williams and Athens Gastroenterology Association, by Defendant Olympus intentionally included representations that the CF-180AL Scope could be effectively cleaned and sanitized.

240. The aforementioned representations distributed to the Plaintiff's healthcare providers, including, but not limited to, Dr. Williams and Athens Gastroenterology Association, by Defendant Olympus intentionally included representations that the CF-180AL Scope was a better alternative for use in procedures than other endoscopes, thereby encouraging the use of CF-180AL scopes over other endoscopes.

241. The aforementioned representations made by Defendant Olympus were, in fact, false.

242. When the aforementioned representations were made by Defendant Olympus, it knew those representations to be false and it willfully, wantonly and recklessly disregarded whether the representations were true.

243. The aforementioned representations were made by Defendant Olympus with the intent of defrauding and deceiving Plaintiff's healthcare providers, including, but not limited to, Dr. Williams and Athens Gastroenterology Association, as well as the FDA and the general public, and were made with the intent of inducing them to recommend and/or use the CF-180AL Scope in procedures, such as the one performed on Plaintiff Stephen Collett, all of which evinced a callous, reckless, willful, wanton and/or depraved indifference to the health, safety and welfare of the Plaintiff herein.

244.    The aforesaid representations were made by Defendant Olympus beginning from when the CF-180AL Scope was first marketed to Plaintiff's healthcare providers, including, but not limited to, Dr. Williams and Athens Gastroenterology Association, up through and until the Plaintiff's procedure place.

245.    Information about the exact dates on which these representations were made is in the possession, custody and control of Defendant Olympus.

246.    During the time period the aforesaid representations were made by Defendant Olympus, Plaintiff's healthcare providers, including, but not limited to, Dr. Williams and Athens Gastroenterology Association, were unaware of the falsity of said representations and reasonably believed them to be true.

247.    The aforesaid representations were made by Defendant Olympus in order to induce the Plaintiff and/or his respective healthcare professionals, including Dr. Williams and Athens Gastroenterology Association, to rely upon said misrepresentations and use the CF-180AL Scope in Plaintiff Stephen Collett's procedure.

248.    In reliance upon Defendant Olympus's representations, Plaintiff's healthcare providers, including, but not limited to, Dr. Williams and Athens Gastroenterology Association, were induced to and did use the CF-180AL Scope in Plaintiff's procedure, thereby causing the Plaintiff Stephen Collett to sustain severe and personal injuries, including, but not limited to, HIV, AIDS, and diminished enjoyment of life, as well as the need for lifelong medical treatment.

249.    Defendant Olympus knew and was aware or should have been aware that the CF-180AL Scope had not been sufficiently tested, was defective in nature, and/or that it lacked adequate and/or sufficient warnings and reprocessing instructions.

250.    Defendant Olympus knew or should have known that the CF-180AL Scope had a potential to, could, and would cause severe and grievous injury to the users of said product, and that it was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

251.    Defendant Olympus brought the CF-180AL Scope to the market, and acted fraudulently, willfully, wantonly and maliciously to the detriment of the Plaintiff.

252.    Defendant Olympus's aforementioned conduct constitutes fraud and deceit.

253.    As a result of Defendant Olympus's fraudulent misrepresentations and deceit, Plaintiff Stephen Collett was caused to suffer severe and personal injuries, including, but not limited to, HIV, AIDS, and diminished enjoyment of life, as well as the need for lifelong medical treatment.

254.    By reason of the foregoing, Plaintiffs have been damaged.

## ELEVENTH CAUSE OF ACTION AS AGAINST DEFENDANT ASP
### (FRAUDULENT MISREPRESENTATION/DECEIT)

255.    Plaintiffs repeat, reiterate, and reallege each and every allegation in Paragraphs 1 through 254, with the same force and effect as if more fully set forth herein.

256.    Defendant ASP had a duty when disseminating information to the public, including the Plaintiff Stephen Collett and his healthcare providers, to disseminate truthful information and a parallel duty not to deceive the public, including the Plaintiff and his healthcare providers.

257.    The information distributed to the public, including the Plaintiff and his healthcare providers, by Defendant ASP through its websites, product brochures, reprocessing

instructions, and/or sales representatives contained material representations of fact and/or omissions.

258.    Specifically, as to the reprocessing instructions that were used with respect to the CIDEX used in Plaintiff's procedure, the entire set of instructions were representations made by Defendant ASP to the medical personnel at Athens Gastroenterology Association that if they followed the instructions, the colonoscope would be effectively cleaned and sanitized.

259.    The aforementioned representations distributed to the Plaintiff's healthcare providers, including, but not limited to, Dr. Williams and Athens Gastroenterology Association, by Defendant ASP intentionally included representations that the CIDEX was safe and effective for its intended use as a colonoscope disinfectant.

260.    The aforementioned representations distributed to the Plaintiff's healthcare providers, including, but not limited to, Dr. Williams and Athens Gastroenterology Association, by Defendant ASP intentionally included representations that CIDEX could effectively clean and sanitize colonoscopes.

261.    The aforementioned representations made by Defendant ASP were, in fact, false.

262.    When the aforementioned representations were made by Defendant ASP, it knew those representations to be false and it willfully, wantonly and recklessly disregarded whether the representations were true.

263.    The aforementioned representations were made by Defendant ASP with the intent of defrauding and deceiving Plaintiff's healthcare providers, including, but not limited to, Dr. Williams and Athens Gastroenterology Association, as well as the FDA and the general public, and were made with the intent of inducing them to recommend and/or use CIDEX in cleaning

instruments used in procedures, such as the one performed on Plaintiff Stephen Collett, all of which evinced a callous, reckless, willful, wanton and/or depraved indifference to the health, safety and welfare of the Plaintiffs herein.

264.     The aforesaid representations were made by Defendant ASP beginning from when CIDEX was first marketed to Plaintiff's healthcare providers, including, but not limited to, Dr. Williams and Athens Gastroenterology Association, up through and until the Plaintiff's procedure.  The aforementioned representations made by Defendant ASP continue today in its marketing materials and on its website.  *See* https://www.emea.aspjj.com/products/manual-solutions/cidex.

265.     Information about the exact dates on which these representations were made is in the possession, custody and control of Defendant ASP.

266.     During the time period the aforesaid representations were made by Defendant ASP, Plaintiff's healthcare providers, including, but not limited to, Dr. Williams and Athens Gastroenterology Association, were unaware of the falsity of said representations and reasonably believed them to be true.

267.     The aforesaid representations were made by Defendant ASP in order to induce the Plaintiff and/or his respective healthcare professionals, including Dr. Williams and Athens Gastroenterology Association, to rely upon said misrepresentations and use CIDEX on the instrument used in Plaintiff Stephen Collett's procedure.

268.     In reliance upon Defendant ASP's representations, Plaintiff's healthcare providers, including, but not limited to, Dr. Williams and Athens Gastroenterology Association, were induced to and did use CIDEX on the CF-180AL Scope in Plaintiff's procedure, thereby

causing the Plaintiff Stephen Collett to sustain severe and personal injuries, including, but not limited to, HIV, AIDS, and diminished enjoyment of life, as well as the need for lifelong medical treatment.

269.    Defendant ASP knew and was aware or should have been aware that the CIDEX had not been sufficiently tested, was defective in nature, and/or that it lacked adequate and/or sufficient warnings and reprocessing instructions.

270.    Defendant ASP knew or should have known that the CIDEX used on the colonoscope had a potential to, could, and would cause severe and grievous injury to the users of said product, and that it was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

271.    Defendant ASP brought the CIDEX to the market, and acted fraudulently, willfully, wantonly and maliciously to the detriment of the Plaintiffs.

272.    Defendant ASP's aforementioned conduct constitutes fraud and deceit.

273.    As a result of Defendant ASP's fraudulent misrepresentations and deceit, Plaintiffs Stephen Collett and Felicity Collett were caused to suffer severe and personal injuries, including, but not limited to, HIV, AIDS, and diminished enjoyment of life, as well as the need for lifelong medical treatment.

274.    By reason of the foregoing, Plaintiffs have been damaged.

### TWELFTH CAUSE OF ACTION AS AGAINST DEFENDANT OLYMPUS (FRAUDULENT CONCEALMENT/DECEIT)

275.    Plaintiffs repeat, reiterate, and reallege each and every allegation in Paragraphs 1 through 274, with the same force and effect as if more fully set forth herein.

276.    Defendant Olympus conducted and/or should have conducted testing and research on the CF-180AL Scope.

277.    As a result of Defendant Olympus's research and testing, or lack thereof, Defendant Olympus intentionally omitted certain results of this research and testing from the Plaintiff, his healthcare providers, including Dr. Williams and Athens Gastroenterology Association, and the general public.

278.    At all times during the course of dealing between Defendant Olympus and Plaintiff's healthcare providers, including, but not limited to, Dr. Williams and Athens Gastroenterology Association, Defendant Olympus concealed the serious and grave health risk that could occur by virtue of use of the CF-180AL Scope for its intended purpose, particularly the risk of microbial contamination and the spread of these contaminants from one patient to another associated with the CF-180AL Scope and/or its reprocessing instructions.

279.    Defendant Olympus concealment of the serious and grave health risks associated with the CF-180AL Scope and/or its reprocessing instructions was willful, wanton and/or reckless.

280.    Upon information and belief, Defendant Olympus intentionally suppressed, ignored and disregarded test results not favorable to the Defendants, and results that demonstrated that the CF-180AL Scope was not safe as other endoscopes.

281.    In representations made to Plaintiff's healthcare providers, as identified herein, including Dr. Williams, via its website, product brochures, reprocessing instructions and sales representatives, Defendant Olympus fraudulently concealed and intentionally omitted the following material information:

(a)     that the CF-180AL Scope was not as safe as other endoscopes, such that it increased the risk of microbial contamination and the spread of these contaminants from one patient to another;

(b)     that the risks of adverse events with the CF-180AL Scope, such as microbial contamination and the spread of these contaminants from one patient to another, were higher than with other endoscopes;

(c)     that the risks of adverse events with the CF-180AL Scope were not adequately tested and/or known by Defendant Olympus;

(d)     that Defendant Olympus was aware of dangers in the CF-180AL Scope that were in addition to and above and beyond those associated with other endoscopes;

(e)     that the CF-180AL Scopes were defective, and caused dangerous side effects, including, but not limited to, antibiotic-resistant infections, as well as other severe and permanent health consequences, in a much higher rate than other endoscopes;

(f)     that the use of CF-180AL Scopes resulted in dangerous side effects, including, but not limited to, microbial contamination and the spread of these contaminants from one patient to another,

(g)     that the CF-180AL Scope was manufactured, marketed, produced, sold and distributed negligently;

(h)     that the CF-180AL Scope was manufactured, marketed, produced, sold and distributed defectively;

(i)     that the CF-180AL Scope was manufactured, marketed, produced, sold and distributed improperly;

(j)     that the CF-180AL Scope's reprocessing instructions were inadequate in that they did not instruct, direct and/or otherwise allow for proper and/or adequate cleaning and sanitizing of the CF-180AL Scope;

(k)     that the CF-180AL Scope's reprocessing instructions did not prevent the spread of microbial contaminants, but in fact increased the risk of the spread of these contaminants;

(l)     that the CF-180AL Scope was designed negligently;

(m)     that the CF-180AL Scope was designed defectively; and

(n)     that the CF-180AL Scope was designed improperly.

282.    Defendant Olympus was under a duty to disclose to Plaintiff's healthcare providers, including, but not limited to, Dr. Williams and Athens Gastroenterology Association, the defective nature of the CF-180AL Scope, including, but not limited to, the heightened risks of antibiotic-resistant infections associated with its use.

283.    Defendant Olympus had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to persons who were exposed to the CF-180AL Scope, including the Plaintiff, in particular.

284.    Plaintiff and/or his treating healthcare providers were unaware of the defective nature of the CF-180AL Scope and its propensity to cause serious and dangerous side effects, and hence, cause damage to persons who used the CF-180AL Scope, including Plaintiff Stephen

Collett, in particular, because this information was in the custody, possession and control of Defendant Olympus.

285.    Defendant Olympus's concealment and omission of material facts concerning, inter alia, the safety of the CF-180AL Scope was made purposefully, willfully, wantonly, and/or recklessly, to mislead Plaintiff Stephen Collett's healthcare providers into reliance and continued use of the CF-180AL Scope, and to cause them to purchase and/or use the CF-180AL Scope.

286.    Defendant Olympus knew that Plaintiff's healthcare providers had no way to determine the truth behind its concealment and omissions, as set forth herein.

287.    Plaintiff's healthcare providers reasonably relied on representations made by Defendant Olympus, which recklessly, willfully, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendant Olympus.

288.    Representatives of Defendant Olympus had numerous contacts with Athens Gastroenterology Association between the time period that Defendant Olympus first marketed and sold its CF-180AL Scopes to Athens Gastroenterology Association until Plaintiff Stephen Collett underwent his Procedure.

289.    Because the fraudulent concealments continuously occurred between the time period that Defendant Olympus first marketed and sold the CF-180AL Scopes to Athens Gastroenterology Association until the Plaintiff Stephen Collett underwent his Procedure, it is difficult, if not virtually impossible, to identify every date on which this fraudulent concealment occurred.

290.    All information regarding Defendant Olympus's numerous contacts with Athens Gastroenterology Association between the time period that Defendant Olympus first marketed

and sold its CF-180AL Scopes to Athens Gastroenterology Association until Plaintiff underwent his procedure is the possession, custody and control of Defendant Olympus.

291.    Upon information and belief, had the severe health risks associated with the CF-180AL Scope, as outlined herein, been properly and/or adequately disclosed, Plaintiff's healthcare providers would not have purchased and/or used the CF-180AL Scope.

292.    Upon information and belief, had had the severe health risks associated with the CF-180AL Scope, as outlined herein, been properly and/or adequately disclosed, Plaintiff's healthcare providers would have warned the Plaintiff of said risks.

293.    Had the severe health risks associated with the CF-180AL Scope, as outlined herein, been properly and/or adequately disclosed, Plaintiff would not have allowed the CF-180AL Scope to be used in his procedure.

294.    As a result of the aforementioned fraudulent concealment of each and every Defendant, Plaintiff Stephen Collett was caused to suffer severe and personal injuries, including, but not limited to, HIV, AIDS, and diminished enjoyment of life, as well as the need for lifelong medical treatment.

295.    By reason of the foregoing, Plaintiffs have been damaged.

### THIRTEENTH CAUSE OF ACTION AS AGAINST DEFENDANT ASP
### (FRAUDULENT CONCEALMENT/DECEIT)

296.    Plaintiffs repeat, reiterate, and reallege each and every allegation in Paragraphs 1 through 295, with the same force and effect as if more fully set forth herein.

297.    Defendant ASP conducted and/or should have conducted testing and research on CIDEX.

298.    As a result of Defendant ASP's research and testing, or lack thereof, Defendant ASP intentionally omitted certain results of this research and testing from the Plaintiff, his healthcare providers, including Dr. Williams and Athens Gastroenterology Association, and the general public.

299.    At all times during the course of dealing between Defendant ASP and Plaintiff's healthcare providers, including, but not limited to, Dr. Williams and Athens Gastroenterology Association, Defendant ASP concealed the serious and grave health risk that could occur by virtue of use CIDEX for its intended purpose, particularly the risk of microbial contamination and the spread of these contaminants from one patient to another associated with the CIDEX and/or its reprocessing instructions.

300.    Defendant ASP concealment of the serious and grave health risks associated with the CIDEX and/or its reprocessing instructions was willful, wanton and/or reckless.

301.    Upon information and belief, Defendant ASP intentionally suppressed, ignored and disregarded test results not favorable to the Defendants, and results that demonstrated that the CIDEX was not as safe as other reprocessing methods.

302.    In representations made to Plaintiff's healthcare providers, as identified herein, including Dr. Williams and ASP, via its website, product brochures, reprocessing instructions and sales representatives, Defendant ASP fraudulently concealed and intentionally omitted the following material information:

> (a)    that the CIDEX was not as safe as other methods for cleaning endoscopes, such that it increased the risk of microbial contamination and the spread of these contaminants from one patient to another;

(b)    that the risks of adverse events with CIDEX, such as microbial contamination and the spread of these contaminants from one patient to another, were higher than with other products;

(c)    that the risks of adverse events with the CIDEX were not adequately tested and/or known by Defendant ASP;

(d)    that Defendant ASP was aware of dangers of CIDEX that were in addition to and above and beyond those associated with other products;

(e)    that CIDEX was defective, and caused dangerous side effects, including, but not limited to, infections, as well as other severe and permanent health consequences, in a much higher rate than other products;

(f)    that the use CIDEX resulted in dangerous side effects, including, but not limited to, contamination and the spread of these contaminants from one patient to another,

(g)    that CIDEX was manufactured, marketed, produced, sold and distributed negligently;

(h)    that CIDEX was manufactured, marketed, produced, sold and distributed defectively;

(i)    that CIDEX was manufactured, marketed, produced, sold and distributed improperly;

(j)    that CIDEX's reprocessing instructions were inadequate in that they did not instruct, direct and/or otherwise allow for proper and/or adequate cleaning and sanitizing colonoscopes using CIDEX;

(k) that CIDEX's reprocessing instructions did not prevent the spread of microbial contaminants, but in fact increased the risk of the spread of these contaminants;

(l) that CIDEX was designed negligently;

(m) that CIDEX was designed defectively; and

(n) that CIDEX was designed improperly.

303. Defendant ASP was under a duty to disclose to Plaintiff's healthcare providers, including, but not limited to, Dr. Williams and Athens Gastroenterology Association, the defective nature of CIDEX, including, but not limited to, the heightened risks of infections associated with its use.

304. Defendant ASP had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to persons who were exposed to CIDEX, including the Plaintiff, in particular.

305. Plaintiff and/or his treating healthcare providers were unaware of the defective nature of CIDEX and its propensity to cause serious and dangerous side effects, and hence, cause damage to persons who used the CIDEX on colonoscopes, including the one used on Plaintiff Stephen Collett, in particular, because this information was in the custody, possession and control of Defendant ASP.

306. Defendant ASP's concealment and omission of material facts concerning, inter alia, the safety of CIDEX was made purposefully, willfully, wantonly, and/or recklessly, to mislead Plaintiff Stephen Collett's healthcare providers into reliance and continued use of the CIDEX, and to cause them to purchase and/or use CIDEX.

307.    Defendant ASP knew that Plaintiff's healthcare providers had no way to determine the truth behind its concealment and omissions, as set forth herein.

308.    Plaintiff's healthcare providers reasonably relied on representations made by Defendant ASP, which recklessly, willfully, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendant ASP.

309.    Representatives of Defendant ASP had numerous contacts with Athens Gastroenterology Association between the time period that Defendant ASP first marketed and sold CIDEX to Athens Gastroenterology Association until Plaintiff Stephen Collett underwent his procedure.

310.    Because the fraudulent concealments continuously occurred between the time period that Defendant ASP first marketed and sold CIDEX to Athens Gastroenterology Association until the Plaintiff Stephen Collett underwent his procedure, it is difficult, if not virtually impossible, to identify every date on which this fraudulent concealment occurred.

311.    All information regarding Defendant ASP's numerous contacts with Athens Gastroenterology Association between the time period that Defendant ASP first marketed and sold CIDEX to Athens Gastroenterology Association until Plaintiff underwent his Procedure is the possession, custody and control of the ASP.

312.    Upon information and belief, had the severe health risks associated with CIDEX, as outlined herein, been properly and/or adequately disclosed, Plaintiff's healthcare providers would not have purchased and/or used CIDEX.

313.   Upon information and belief, had had the severe health risks associated with the CIDEX, as outlined herein, been properly and/or adequately disclosed, Plaintiff's healthcare providers would have warned the Plaintiff of said risks.

314.   Had the severe health risks associated with the CIDEX, as outlined herein, been properly and/or adequately disclosed, Plaintiff would not have allowed CIDEX to be used to disinfect the colonoscope to be used in his procedure.

315.   As a result of the aforementioned fraudulent concealment of each and every Defendant, Plaintiffs Stephen Collett and Felicity Collett were caused to suffer severe and personal injuries, including, but not limited to, HIV, AIDS, and diminished enjoyment of life, as well as the need for lifelong medical treatment.

316.   By reason of the foregoing, Plaintiffs have been damaged.

### FOURTEENTH CAUSE OF ACTION AS AGAINST DEFENDANT OLYMPUS (NEGLIGENT MISREPRESENTATION)

317.   Plaintiffs repeat, reiterate, and reallege each and every allegation in Paragraphs 1 through 316, with the same force and effect as if more fully set forth herein.

318.   Defendant Olympus had a duty to Plaintiff to make accurate representations to her healthcare providers, including, but not limited to, Dr. Williams and Athens Gastroenterology Association, regarding the safety and effectiveness of the CF-180AL Scope and/or its reprocessing instructions.

319.   Defendant Olympus had a duty to Plaintiff to inform his healthcare providers, including, but not limited to, Dr. Williams and Athens Gastroenterology Association, regarding the safety and effectiveness of the CF-180AL Scope of any and all risks and/or side effects associated with the CF-180AL Scope and/or its reprocessing instructions.

320.    Defendant Olympus breached the aforementioned duties by representing to Plaintiff's healthcare providers, as identified herein, including, but not limited to, Dr. Williams and Athens Gastroenterology Association, that the CF-180AL Scope was safe for use as a colonoscope in procedures, when it was in fact not.

321.    Defendant Olympus breached the aforementioned duties by representing to Plaintiff's healthcare providers, as identified in herein, including, but not limited to, Dr. Williams and Athens Gastroenterology Association, that the CF-180AL Scope was safe for use, and by failing to inform them of the risk of microbial contamination and the spread of these contaminants from one patient to another.

322.    The representations made by Defendant Olympus were false.

323.    The representations made by Defendant Olympus were made via its website, product brochures, reprocessing instructions and/or sales representatives.

324.    Defendant Olympus failed to exercise ordinary care in the representations it made regarding the safety of the CF-180AL Scope, while involved in its design, manufacture, sale, testing, quality assurance, quality control, and/or distribution into interstate commerce, in that Defendant Olympus negligently misrepresented the CF-180AL Scope's high risk of unreasonable, dangerous side effects, including, but not limited to, microbial contamination and the spread of this contamination from one patient to another.

325.    Defendant Olympus knew and/or should have known that the CF-180AL Scope had been insufficiently tested and/or had not been tested, that it lacked adequate and/or accurate warnings, that its reprocessing instructions were inadequate and inaccurate, and/or that it created a high risk and/or higher than acceptable risk of severe and grave health consequences,

including, but not limited to, microbial contamination and the spread of this contamination from one patient to another.

326.    As a result of the negligent misrepresentations made by Defendant Olympus, Plaintiff Stephen Collett was caused to suffer severe and personal injuries, including, but not limited to, HIV, AIDS, and diminished enjoyment of life, as well as the need for lifelong medical treatment.

327.    By reason of the foregoing, Plaintiffs have been damaged.

## FIFTEENTH CAUSE OF ACTION AS AGAINST DEFENDANT ASP
## (NEGLIGENT MISREPRESENTATION)

328.    Plaintiffs repeat, reiterate, and reallege each and every allegation in Paragraphs 1 through 327, with the same force and effect as if more fully set forth herein.

329.    Defendant ASP had a duty to Plaintiff Stephen Collett to make accurate representations to his healthcare providers, including, but not limited to, Dr. Williams and Athens Gastroenterology Association, regarding the safety and effectiveness of CIDEX and/or its reprocessing instructions.

330.    Defendant ASP had a duty to Plaintiff to inform his healthcare providers, including, but not limited to, Dr. Williams and Athens Gastroenterology Association, regarding the safety and effectiveness CIDEX of any and all risks and/or side effects associated with the CIDEX and/or its reprocessing instructions.

331.    Defendant ASP breached the aforementioned duties by representing to Plaintiff's healthcare providers, as identified herein, including, but not limited to, Dr. Williams and Athens Gastroenterology Association, that CIDEX Scope was safe for use as a high level disinfectant for colonoscopes, when it was in fact not.

332.    Defendant ASP breached the aforementioned duties by representing to Plaintiff's healthcare providers, as identified herein, including, but not limited to, Dr. Williams and Athens Gastroenterology Association, that CIDEX was safe for use, and by failing to inform them of the risk of microbial contamination and the spread of these contaminants from one patient to another.

333.    The representations made by Defendant ASP were false.

334.    The representations made by Defendant ASP were made via its website, product brochures, reprocessing instructions and/or sales representatives.

335.    Defendant ASP failed to exercise ordinary care in the representations it made regarding the safety of CIDEX, while involved in its design, manufacture, sale, testing, quality assurance, quality control, and/or distribution into interstate commerce, in that Defendant ASP negligently misrepresented CIDEX's high risk of unreasonable, dangerous side effects, including, but not limited to, microbial contamination and the spread of this contamination from one patient to another.

336.    Defendant ASP knew and/or should have known that CIDEX had been insufficiently tested and/or had not been tested, that it lacked adequate and/or accurate warnings, that its reprocessing instructions were inadequate and inaccurate, and/or that it created a high risk and/or higher than acceptable risk of severe and grave health consequences, including, but not limited to, microbial contamination and the spread of this contamination from one patient to another.

337.    As a result of the negligent misrepresentations made by Defendant ASP, Plaintiffs Stephen Collett and Felicity Collett were caused to suffer severe and personal injuries, including,

but not limited to, HIV, AIDS, and diminished enjoyment of life, as well as the need for lifelong medical treatment.

338.    By reason of the foregoing, Plaintiffs have been damaged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against each and every Defendant on each of the above-referenced claims and Causes of Action and as follows:

1.    For any other causes of action and/or claims as may be compensable under local laws and/or statutes as may apply under the laws in the jurisdiction and venue in which this case may be transferred for trial;

2.    Awarding compensatory damages to Plaintiffs for past and future damages, including, but not limited to, pain and suffering for severe injuries sustained by Plaintiffs, health care costs, loss of wages and/or earning capacity, and medical monitoring, together with interest and costs as provided by law;

3.    Punitive and/or exemplary damages for the intentional, wanton, willful, fraudulent, reckless, and/or grossly negligent acts of Defendants, who demonstrated a profound disregard and reckless indifference for the health and welfare of the general public and of the Plaintiff, in an amount sufficient to punish Defendants and deter future similar conduct;

4.    Awarding Plaintiffs' reasonable attorneys' fees;

5.    Awarding Plaintiffs the cost of these proceedings; and

6.    Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury as to all issues.

Respectfully submitted August 13, 2018.

/s/ Richard A. Wingate
F. EDWIN HALLMAN, JR.
State Bar of Georgia #319800
ehallman@hallmanwingate.com
RICHARD A. WINGATE
State Bar of Georgia #770617
rwingate@hallmanwingate.com

For HALLMAN & WINGATE, LLC

166 Anderson Street, S.E.
Suite 210
Marietta, Georgia 30060
(404) 588-2530

/s/ James W. Hurt, Jr.
JAMES W. HURT, JR.
State Bar of Georgia #380104
jhurt@hurtstolz.com

For HURT STOLZ, LLC

1551 Jennings Mill Road
Suite 3100-B
Watkinsville, Georgia 30677
(706) 395-2750

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

STEPHEN R. COLLETT and )
FELICITY COLLETT, )
 )
Plaintiffs, )
 )
v. ) CIVIL ACTION
 ) FILE NO. 3:18-CV-00066-CDL
OLYMPUS OPTICAL CO., LTD., and )
ADVANCED STERILIZATION PRODUCTS, )
a Division of Ethicon, Inc., )
 )
Defendants. )
 )
 )

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on August 13, 2018, I have electronically filed the foregoing

Amended Complaint with the Clerk of Court using the CM/ECF system which will automatically

send email notification of such filing to the following attorney(s) of record:

Kara Cleary, Esq.

And by placing a copy of same in the United States Mail with adequate postage thereon to:

Olympus Optical Co., Ltd.
Shinjuku Monolith
2-3-1 Nishi-Shinjuku
Shinjuku-ku, Tokyo 163-0914

/s/ Richard A. Wingate
RICHARD A. WINGATE
State Bar of Georgia #770617

For HALLMAN & WINGATE, LLC
Attorneys for Plaintiff

166 Anderson Street, S.E.
Suite 210
Marietta, Georgia 30060
(404) 588-2530