IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

STEPHEN R. COLLETT and FELICITY *
COLLETT,
 *
    Plaintiff,
 *
vs.
 *     CASE NO. 3:18-CV-66 (CDL)
OLYMPUS OPTICAL CO. and ADVANCED
STERILIZATION PRODUCTS, *

    Defendants. *

## O R D E R

Stephen Collett alleges that he contracted human immunodeficiency virus (HIV) from an improperly disinfected colonoscope that was manufactured by Olympus Optical Co. and disinfected with CIDEX, a disinfectant manufactured by Advanced Sterilization Products ("ASP"). Stephen's wife Felicity later contracted HIV. Plaintiffs brought claims against Defendants for negligence, design defect, manufacturing defect, failure to warn, fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation. ASP filed a motion to dismiss, arguing that Plaintiffs' claims are barred by the applicable statute of limitations and that Plaintiffs' Amended Complaint does not adequately allege fraudulent misrepresentation or fraudulent concealment. As discussed below, the motion (ECF No. 18) is denied. Also pending before the Court is Olympus's

recently filed motion to dismiss for lack of personal jurisdiction. That motion is not yet ripe, and the Court will address it in a separate order.

MOTION TO DISMISS STANDARD

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims. *Id.* at 556. But "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

ASP asserts that in considering its motion to dismiss, the Court should take judicial notice of and consider several articles and regulatory materials regarding the sterilization of medical devices to prevent HIV, including materials submitted to the U.S. Food and Drug Administration during the 510(k)

2

regulatory process and articles on the potential for infection due to improper sterilization of dental and medical equipment. In most cases, the Court cannot consider matters outside the pleadings in ruling on a Rule 12(b)(6) motion to dismiss unless the court converts the motion to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). "[A] document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). The articles and regulatory materials ASP submitted are not central to Plaintiffs' claims, and the Court declines to consider them.

ASP argues that the Court "may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment." *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (per curiam). That is true in some cases and for some types of documents. In *Horne*, for example, the district court properly took judicial notice of court documents from the plaintiff's first employment discrimination action to determine whether her second action was barred by res judicata. *Id.*; *see Billingsea v. Graphic Packaging Int'l, Inc.*, No. 5:13-CV-16 (CAR), 2013 WL 2156473, at *2 (M.D. Ga. May 17, 2013) (taking judicial notice of documents filed in prior

3

judicial proceedings); *see also Canal Indem. Co. v. Richardson*, No. 5:14-CV-431 (WLS), 2015 WL 13449666, at *1 (M.D. Ga. Apr. 1, 2015) (taking judicial notice of state court docket). And in *Oxford Asset Management, Ltd. v. Jaharis*, 297 F.3d 1182 (11th Cir. 2002), the Eleventh Circuit stated that "[i]n a motion to dismiss a securities action, a court may consider the contents of public disclosure documents which are required to be filed with the SEC and are actually so filed." *Id.* at 1188; *accord Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1279 (11th Cir. 1999); *see also U.S.* ex rel. *Osheroff v. Humana Inc.*, 776 F.3d 805, 811 (11th Cir. 2015) (finding that the district court did not err in considering judicially noticed newspaper articles in determining whether the plaintiff's complaint failed to state a claim based on the False Claims Act's public-disclosure bar). This case is not remotely factually similar to any of the cases ASP cited in support of its motion for judicial notice. Here, ASP is asking the Court to consider articles and regulatory materials and conclude *as a matter of law*, based on the existence of those materials, that Plaintiffs did not exercise reasonable diligence in investigating their claims. The Court finds that it would be inappropriate to depart from Rule 12(d)'s conversion rule in this case and therefore denies ASP's motion for judicial notice (ECF No. 19).

FACTUAL ALLEGATIONS

Plaintiffs allege the following facts in support of their claims. The Court must accept these allegations as true for purposes of the pending motion.

Stephen Collett underwent a routine colonoscopy with Dr. Jeffery Williams in October 2011. The patient who had a colonoscopy before Stephen had a polyp removed; after that procedure, the colonoscope was disinfected with CIDEX. Then, the colonoscope was used for Stephen's procedure, and Stephen had a polyp removed.

Several weeks after the colonoscopy, Stephen sought medical treatment for fever, night sweats, muscle pain, sore joints, and a skin rash. There is no allegation that Stephen tested positive for HIV at that time, and there is no allegation that Stephen connected (or had reason to connect) his symptoms to the routine colonoscopy. In 2013, Stephen sought medical treatment for breathing issues. On July 22, 2013, Stephen tested positive for HIV. Felicity was then tested for HIV, and she also tested positive. "Plaintiffs were completely shocked by the HIV diagnosis and were unable to determine any possible source of the infection." Am. Compl. ¶ 30, ECF No. 11. Both Plaintiffs "extensively reviewed [their] medical history and the information available to [them] in order to determine a source of the infection," but they "were unable to determine the source

5

of their infection." *Id.* ¶¶ 31-33. Stephen continued to receive medical treatment from Dr. Williams, and Dr. Williams never told him that the colonoscope could have been the source of the infection.

In 2017, Stephen's dentist told him about the research of Dr. David Lewis, who had investigated the transmission of pathogens via flexible colonoscopes. Stephen met with Dr. Lewis on March 21, 2017. Based on the information Dr. Lewis provided to Stephen, Plaintiffs determined that the cause of the HIV infection was the transmission of HIV from a prior patient via the unclean Olympus colonoscope that had been disinfected with ASP's CIDEX product. This was "the first time that Plaintiffs had any indication of the source of their infection." *Id.* ¶ 38.

Plaintiffs assert that Olympus's colonoscope was defectively designed and manufactured and that Olympus knew that its colonoscope could cause cross-contamination and the spread of infectious disease. Plaintiffs further claim that Olympus failed to instruct colonoscope users of proper sterilization methods. Plaintiffs also allege that CIDEX was defectively designed and manufactured and that it increased the risk of spreading infectious diseases. Plaintiffs contend that although ASP knew that CIDEX did not effectively disinfect colonoscopes when used in accordance with ASP's instructions, ASP misrepresented the efficacy of CIDEX, repeatedly telling

healthcare professionals, including Stephen's doctors, that CIDEX was safe and effective as a disinfectant for colonoscopes even though it was not. Those healthcare professionals, including Stephen's doctors, relied on ASP's misrepresentations in deciding to purchase and use CIDEX as a disinfectant.

DISCUSSION

**I. Statute of Limitations**

ASP argues that Plaintiffs' claims are barred, as a matter of law, by the applicable statute of limitations. Georgia has a two-year statute of limitations for personal injury claims. O.C.G.A. § 9-3-33. A personal injury action must be brought "within two years after the right of action accrues." *Id.*

ASP asserts that Stephen's cause of action accrued in November 2011, when Stephen became ill shortly after his colonoscopy, although Stephen was not diagnosed with HIV at that time. In the alternative, ASP contends that Plaintiffs' action accrued in July 2013, when they first tested positive for HIV. Plaintiffs argue that their claims did not accrue until they learned in March 2017 that Stephen may have contracted HIV after being exposed to an infected colonoscope.

Georgia has a discovery rule that applies in certain tort cases: the "cause of action does not accrue so as to cause the statute of limitations to run until a plaintiff discovers or with reasonable diligence should have discovered that he was

7

injured." *Ballew v. A. H. Robins Co.*, 688 F.2d 1325, 1327 (11th Cir. 1982) (quoting *King v. Seitzingers, Inc.*, 287 S.E.2d 252, 254 (Ga. Ct. App. 1982)) (applying Georgia law). "Nor will a cause of action accrue until the plaintiff knew or through the exercise of reasonable diligence should have discovered the causal connection between the injury and the alleged negligent conduct of the defendant." *Id.* Georgia courts and federal courts applying Georgia law have often stated that this discovery rule only applies in "continuing tort" cases. *Id.* ASP argues that because Stephen alleges that he developed HIV sometime after a single exposure to the HIV pathogen during his colonoscopy, this action does not involve a "continuing tort" and the discovery rule thus does not apply.

Based on the Court's review of the relevant case law, the "continuing tort" label is used as a shorthand for "cases of bodily injury which develop only over an extended period of time." *Corp. of Mercer Univ. v. Nat'l Gypsum Co.*, 368 S.E.2d 732, 733 (Ga. 1988) (quoting *Lumbermen's Mut. Cas. Co. v. Pattillo Const. Co.*, 330 S.E.2d 344, 348 (Ga. 1985) (Weltner, J., dissenting)) (overruling *Lumbermen's* and holding that the discovery rule is confined to "cases of bodily injury which develop only over an extended period of time" and does not extend to cases of property damage). One of the earliest cases adopting the "continuing tort" discovery rule was a surgical

8

malpractice case where the doctor left a surgical clamp in a patient's abdomen. *Parker v. Vaughan*, 183 S.E.2d 605, 606 (Ga. Ct. App. 1971). The court noted that the wrong commenced when the doctor left the clamp in the patient, but it was "not a completed wrong." *Id.* "Until somehow recognized, this wrong existed in a suspended state of ob[l]ivion but exist it did. In this state of limbo the statute did not run." *Id.* "As to this type wrong the statute can only begin to run from the time the patient has knowledge, or through the exercise of ordinary care could have learned, of the existence of the continuing tort." *Id.; see also Everhart v. Rich's, Inc.*, 194 S.E.2d 425, 428 (Ga. 1972) (observing, in a product liability case where the plaintiffs were injured by fiberglass particles that broke loose from their draperies and the manufacturer did not provide adequate warnings, that "where the injury is occasioned by violent external means, the result of the previous violation of a duty, no problem arises in fixing the date and time when the statute begins to run," but if "there is a breach of a duty owed to another, e.g., the failure to warn of the existence of a hazard capable of producing injury, and exposure to the hazard or the cumulative effects of continued exposure results in injury, a cause of action accrues when exposure to the hazard first produces ascertainable injury").

Another seminal Georgia discovery rule case is *King v. Seitzingers, Inc.*, 287 S.E.2d 252 (Ga. Ct. App. 1981). In deciding whether to adopt the discovery rule in a workplace lead poisoning case, the Georgia Court of Appeals noted that there are "at least four points at which a tort cause of action may accrue: (1) When the defendant breaches his duty; (2) when the plaintiff suffers harm; (3) when the plaintiff becomes aware of his injury; and (4) when the plaintiff discovers the causal relationship between his harm and the defendant's misconduct." *Id.* at 254 (quoting *Raymond v. Eli Lilly & Co.*, 371 A.2d 170, 172 (N.H. 1977)). The Georgia Court of Appeals adopted the discovery rule for cases "in which the injury and the discovery of the causal relationship do not occur simultaneously." *Id.* (quoting *Raymond*, 371 A.2d at 174).

The Eleventh Circuit applied Georgia's discovery rule in a product liability case regarding an implanted medical device. *Ballew*, 688 F.2d at 1327-28. The plaintiff's injury did not occur until the plaintiff developed an infection that was caused by the device roughly six years after it was implanted. And, even though the plaintiff developed the infection more than two years before she filed her action, the Eleventh Circuit found that there was a fact question on when the statute of limitations accrued because there was evidence that the plaintiff did not know and with reasonable diligence could not

have discovered the relationship between her injuries and the device. *Id.* at 1328.

Under the rationale of *Parker*, *King*, and *Ballew*, the discovery rule is intended to apply in cases like this one where there is a problem fixing the specific date of a bodily injury that develops over time after the event that caused the injury occurred. After all, the discovery rule "is designed to prevent the unfairness that would result from the running of the limitations period before the plaintiff is aware of the facts underlying her cause of action." *M.H.D. v. Westminster Sch.*, 172 F.3d 797, 804 n.15 (11th Cir. 1999) (applying Georgia law). This case clearly involves a bodily injury that developed "only over an extended period of time." *Corp. of Mercer Univ.*, 368 S.E.2d at 733. Plaintiffs allege that the unclean colonoscope left an infectious agent in Stephen's body that later developed into HIV. Stephen did not suffer an injury until he contracted HIV weeks or months after the colonoscopy, and Plaintiffs allege that they were not able to discover a causal connection between the HIV infection and the colonoscopy until years later even though they exercised reasonable diligence. Under these circumstances, the Court finds that Georgia's discovery rule applies. Plaintiffs' cause of action did not accrue until they discovered "or with reasonable diligence should have discovered that [they were] injured" and that there was a "causal

11

connection between the injury and the alleged negligent conduct of the defendant." *Ballew*, 688 F.2d at 1327 (quoting *King*, 287 S.E.2d at 254).

The cases cited by ASP where the discovery rule was not applied for lack of a "continuing tort" do not support a different conclusion.[1] In ASP's cases, the plaintiff suffered a personal injury and immediately knew or should have suspected the cause of the injury, even if he did not know the extent of his injury or that it was caused by misconduct. Thus, the discovery rule did not apply in a slip and fall case because the "injury was 'occasioned by violent external means,' . . . the statute of limitation began to run on the day his injury was actually sustained." *Bitterman v. Emory Univ.*, 333 S.E.2d 378, 379 (Ga. Ct. App. 1985) (quoting *Everhart*, 194 S.E.2d at 428). The discovery rule likewise did not apply in *M.H.D. v. Westminster Schools*, a case involving sexual abuse by a teacher, which "constituted an immediate legal injury to" the student when it happened, although the statute of limitations was tolled until the student reached the age of majority. 172 F.3d at 804.

---

[1] *Quashie v. Olympus America, Inc.*, 315 F. Supp. 3d 1329 (N.D. Ga. 2018) does not support a different conclusion, either. In that case, the district judge determined that a plaintiff's claims did not accrue when she underwent a procedure with an allegedly defective duodenoscope. *Id.* at 1339-40. Rather, her claims could not have accrued until she became seriously ill and was hospitalized several weeks later. *Id.* at 1340. Because the plaintiff filed her action within two years after her injury (being hospitalized with a serious infection), the district court did not need to examine whether the discovery rule applied.

And, the discovery rule did not apply in *Bell v. C.B. Fleet Holding Co.*, No. 1:07-CV-84-GET, where the plaintiff "immediately became ill soon after using defendant's [laxative] product and did not suffer any continued exposure to the product." 2008 WL 11336406, at *3 (N.D. Ga. Aug. 15, 2008); *accord Burch v. Remington Arms Co., LLC*, No. 2:13-CV-00185-RWS, 2014 WL 12543887, at *3 (N.D. Ga. May 6, 2014) (declining to apply discovery rule in a case where the plaintiff was injured when an allegedly defective rifle discharged). The Court is not convinced that the rationale of these "immediate injury" cases applies here, where Stephen did not suffer an immediate injury following the colonoscopy.

ASP argues that even if the discovery rule applies in this case, the Court should find, as a matter of law, that Plaintiffs did not exercise reasonable diligence because they should have been able to make a connection between the colonoscopy and the HIV infection based on a handful of published articles suggesting a link between improperly sterilized medical devices and infections. As discussed above, the Court declines to consider matters outside the pleadings, such as the articles, in ruling on ASP's motion to dismiss. Furthermore, the question whether Plaintiffs knew or with reasonable diligence should have discovered the causal connection between their injuries and ASP's alleged misconduct is generally a matter of fact for the

13

jury. *See King*, 287 S.E.2d at 255. Plaintiffs allege that they did not discover and could not have discovered with reasonable diligence the causal connection between the colonoscope and their HIV infection until March 2017. They filed this action within two years of that date, so their action is timely.

## II. Fraud Claims

ASP asserts that Plaintiffs' fraudulent misrepresentation and fraudulent concealment claims should be dismissed for failure to comply with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). This argument is unpersuasive. Plaintiffs sufficiently stated the facts upon which their fraud claims are based. If Plaintiffs prove those facts, Plaintiffs will have established the essential elements of a fraud claim under Georgia law. Accordingly, ASP's motion to dismiss the fraud claims pursuant to Rule 9(b) is denied.

## CONCLUSION

For the reasons set forth above, ASP's motion to dismiss (ECF No. 18) and motion for judicial notice (ECF No. 19) are denied.

IT IS SO ORDERED, this 11th day of December, 2018.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA