IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

STEPHEN R. COLLETT and FELICITY *
COLLETT,
　　　　　　　　　　　　　　　　　　*
　　　Plaintiffs,
　　　　　　　　　　　　　　　　　　*
vs.　　　　　　　　　　　　　　　　　　CASE NO. 3:18-CV-66 (CDL)
　　　　　　　　　　　　　　　　　　*
OLYMPUS MEDICAL SYSTEMS CORP.
and OLYMPUS AMERICA INC.,　　　　*

　　　Defendants.　　　　　　　　*

## O R D E R

If a foreign corporation sells its product through a separate affiliated distributor throughout the United States but does not specifically instruct its distributor in which states to distribute its product, can someone injured by the product sue the foreign manufacturer in the state where the injured party resides when the party was injured in that state and the product was sold there? Defendant Olympus Medical Systems Corporation says "no," which leads to the related troublesome conclusion that it can be sued nowhere in the United States, even though it has reason to know that its product will be sold throughout the United States.

Plaintiffs allege that they suffered injuries caused by a defective Olympus CF-H180AL colonoscope. Olympus Medical Systems Corporation, a Japanese corporation with its principal place of business in Japan, manufactured the colonoscope in Japan and sold

it to an affiliate company, Olympus America, Inc., that imported the colonoscope into the United States. Olympus America then sold the colonoscope to Athens Gastroenterology Associates in Athens, Georgia, where it was used to perform a colonoscopy on Stephen Collett. Plaintiffs allege that the colonoscope was defectively designed in a manner that permitted infectious materials to be transferred from one patient to another, that Stephen contracted human immunodeficiency virus from the colonoscope, and that his wife Felicity contracted the virus from Stephen. Plaintiffs brought this action against Olympus Medical and Olympus America. Olympus America does not challenge personal jurisdiction in this Court, but Olympus Medical does and seeks dismissal of Plaintiffs' claims against it for lack of personal jurisdiction. For the reasons set forth below, Olympus Medical's motion to dismiss (ECF No. 60) is denied.

DISCUSSION

In this diversity case, the Court may exercise personal jurisdiction over a non-resident defendant like Olympus Medical only if (1) jurisdiction is appropriate under the long-arm statute of Georgia (the state where the Court sits) and (2) the exercise of jurisdiction does not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257-58 (11th Cir. 2010). "A plaintiff seeking the

exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Id.* at 1257 (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). "Where, as here, the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" *Id.* (quoting *Mazer*, 556 F.3d at 1274). "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Id.* (quoting *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)).

I. **Factual Background**

Plaintiffs allege that Olympus Medical "transacts business within [Georgia], has committed a tortious act or omission within this state, and/or has committed a tortious injury in this state caused by an act or omission outside of this state." 3d Am. Compl. ¶ 9, ECF No. 54. Plaintiffs further allege that Olympus Medical "regularly does and solicits business, and engages in other persistent courses of conduct, and derives substantial revenue from services rendered in the State of Georgia." *Id.* ¶ 10. Plaintiffs' claims against Olympus Medical are based on alleged defects in a colonoscope that Plaintiffs allege was

3

"designed, manufactured and sold as new by Olympus [Medical]." *Id.* ¶ 21 (alleging that the colonoscope was designed, manufactured, and sold by "Olympus," which includes Olympus Medical and Olympus America).

It is undisputed that Olympus Medical designed and manufactured the CF-H180AL colonoscope that was used on Stephen Collett at Athens Gastroenterology. Tashiro Decl. ¶ 8, ECF No. 32-2. In response to Plaintiffs' jurisdictional allegations, Olympus Medical submitted a declaration that states, in relevant part:

> * Olympus Medical "designs and manufactures the CF-H180AL Colonoscope," and the design and manufacturing takes place in Japan. Taguchi Decl. ¶¶ 5-6, ECF No. 62-1.
>
> * Olympus Medical "is not responsible for and does not control the marketing, advertising, promotion, sale, or distribution of the CF-H180 in the United States, [] does not assist with or provide input into any such activities with respect to Georgia healthcare providers," and "does not contract with any Georgia healthcare providers for the manufacturing, service, sales, or marketing of medical equipment." *Id.* ¶¶ 7, 29.
>
> * Olympus Medical is a separate and distinct legal entity from the other Olympus companies, including Olympus America. *Id.* ¶ 8.
>
> * Olympus Medical does not transact or conduct business in Georgia, does not employ agents or representatives in Georgia, does not have any property in Georgia, does not maintain a mailing address or telephone number in Georgia, has no bank accounts in Georgia, and pays no Georgia taxes. *Id.* ¶¶ 11, 30-33.
>
> * Olympus Medical is not qualified, licensed, or authorized to do business in Georgia and has no

4

affiliates, subsidiaries, or related entities in Georgia. *Id.* ¶¶ 12-13.

* Olympus Medical has no registered agent, facilities, offices, employees, or agents in Georgia. *Id.* ¶¶ 14-15, 18.

* Olympus Medical "does not derive any direct revenue from services performed within Georgia or goods or products used in Georgia" and "does not derive revenue from the sale of medical devices to end users in the United States." *Id.* ¶¶ 19-20.

* Olympus Medical "has not sold products into Georgia" and does not provide repair or maintenance services in Georgia. *Id.* ¶¶ 21, 23.

* Olympus Medical does not ship or sell its products to end users. For a product that Olympus America purchases, Olympus Medical ships the package to an airport in Tokyo, Japan, and Olympus America imports the product into the United States. *Id.* ¶ 22.

* Although Olympus Medical "is identified on several public websites that are accessible worldwide, including in Georgia, [Olympus Medical] does not provide goods or services through those websites." *Id.* ¶ 24.

* Olympus Medical "has not and does not target healthcare providers in Georgia for the sale and distribution of medical devices," "does not purposefully direct its business activities to healthcare providers in Georgia," and "has not and does not purposefully place medical devices into the stream of commerce in Georgia." *Id.* ¶¶ 25-27.

* Olympus Medical "OMSC has no reason to anticipate that, after it sells a CF-H180 to [Olympus America], a CF-H180 will end up in any particular U.S. state, including Georgia." *Id.* ¶ 28.

In response to the declaration, Plaintiffs point to the following evidence:

* The Olympus group of companies claims to have 70% global market share in the gastrointestinal endoscope market; Olympus Medical is responsible for production

5

of those endoscopes, including the CF-H180AL colonoscope. *See* Pls.' Resp. to Def.'s Mot. to Dismiss 2, ECF No. 84 (citing Med. Bus. of Olympus, Olympus Largest Business Domain: from Early Diagnosis to Minimally Invasive Therapy, [https://www.olympus-global.com/ir/data/pdf/ir_medical_2017_01.pdf](https://www.olympus-global.com/ir/data/pdf/ir_medical_2017_01.pdf)); Taguchi Decl. ¶ 5.

* Olympus Medical sells products, including the CF-H180AL colonoscope, to affiliated companies Olympus America and Olympus Corporation of the Americas. Olympus America and Olympus Corporation of the Americas "then sell those scopes to consumers in the United States, including Georgia, within their own business and sales discretion." Olympus Medical's Resp. to Pls.' Interrog. No. 7, ECF No. 69-3 at 4.

* Olympus Medical admits that it had a contract with Olympus America "for the sale of [Olympus Medical]'s products prior to 2017." Def.'s Reply in Supp. of Mot. to Dismiss 4, ECF No. 87.[1]

* On April 5, 2010, Olympus America ordered eighty-nine CF-H180AL colonoscopes from Olympus Medical. Pls.' Resp. to Def.'s Mot. to Dismiss Ex. C, Purchase Order No. 110401-000 at 2, ECF No. 86-3 at 2. The unit price per colonoscope was $14,737.80, for a total cost of $1,311,664.20. *Id.*[2] In the same purchase order, Olympus America also ordered nearly six hundred units

---

[1] There is no copy of this agreement in the present record. Plaintiffs represent that the only distribution agreement Olympus Medical produced in response to their document request seeking agreements governing the sale of Olympus Medical's products in Georgia was a 2017 distribution agreement between Olympus Medical's parent company, Olympus Corporation, and Olympus America's parent company, Olympus Corporation of the Americas. *See* Pls.' Resp. to Def.'s Mot. to Dismiss Ex. A, Master – Distribution Agreement Americas, ECF No. 86-1. Under the agreement, Olympus Corporation of the Americas and its associated companies (like its wholly-owned subsidiary Olympus America) are distributors of Olympus brand medical device products in the Americas. *Id.* at 2-3, ECF No. 86-1 at 2-3. The goal of the distribution agreement is to optimize sales of Olympus brand medical devices in the Americas. *Id.* at 4, ECF No. 86-1 at 4. Olympus Medical is the "Olympus Group" entity that manufactures Olympus brand medical endoscopes, including the CF-H180AL colonoscopes. *See, e.g.*, Tashiro Decl. ¶ 7.

[2] It is the Court's understanding based on the present record that the purchase transactions are denominated in U.S. dollars and that Olympus America only distributes Olympus Medical products in the United States.

6

of other Olympus Medical devices, for an additional cost of more than $7 million.

\* Olympus America's 2009 medical products marketing plan identified customer segments "for the purpose of creating and delivering targeted and effective marketing strategies to increase total market penetration," and the target customer segments include ambulatory surgery centers where colonoscopies are performed, as well as gastroenterologist offices that provide office-based endoscopy. Pls.' Resp. to Def.'s Mot. to Dismiss Ex. D., 142P Business Plan 5, ECF No. 86-4 at 5. It also highlights "an Olympus market share of more than 70 percent" and discusses strategies "to improve profitability and market penetration," in part by transitioning customers "to the 180 platform." *Id.* at 9, ECF No. 86-4 at 9.

\* Olympus Medical does not prohibit the distribution or sale of its colonoscopes in any state. Olympus Medical's Resp. to Pls.' Interrog. No. 21, ECF No. 69-3 at 10.

**II. May the Court Exercise Jurisdiction Under Georgia's Long-Arm Statute?**

Under Georgia's long-arm statute, Georgia courts may exercise personal jurisdiction over a nonresident defendant if the defendant, "in person or through an agent":

(1) Transacts any business within this state;

(2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act; [or]

(3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state[.]

O.C.G.A. § 9-10-91.

Plaintiffs argue that Olympus Medical transacts business in Georgia through Olympus America. In the alternative, Plaintiffs assert that Olympus Medical committed a tortious injury in Georgia caused by an act or omission outside of Georgia and that Olympus Medical regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in Georgia. Plaintiffs allege that Olympus Medical designed and manufactured a defective colonoscope that injured Stephen Collett in Georgia. The Court is thus satisfied that Plaintiffs adequately alleged that Olympus Medical committed a tortious injury in Georgia caused by an act or omission outside of Georgia. Such conduct only confers jurisdiction under Georgia's long arm statute if there is enough evidence to suggest that Olympus Medical "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in" Georgia. O.C.G.A. § 9-10-91(3).

Although Olympus Medical insists that Plaintiffs cannot possibly meet this burden, Olympus Medical admits that it had an agreement to sell its products to Olympus America, which then distributed those products in the United States. So, when Olympus Medical sold its medical products to Olympus America, it expected that those products would be sold to customers in the

United States.  It is thus reasonable to infer that Olympus Medical sold medical devices, including the CF-H180AL colonoscope, to its affiliates like Olympus America *for the purpose* of having those devices distributed in the United States, including Georgia.  Olympus Medical did not exclude Georgia from the territory in which its medical products could be sold.

A medical device manufacturer like Olympus Medical should reasonably expect its products to be sold in Georgia when it sells those products to an affiliated company for the purpose of distributing the products throughout the United States and does not exclude Georgia from the territories where its products may be sold.  A medical device manufacturer claiming to control 70% of the global gastrointestinal endoscope market—seven out of every ten endoscopes sold—may reasonably expect to derive substantial revenue from the sale of those products (or even a subsection of them) in the United States, including Georgia. Although Olympus Medical denies receiving direct revenue from U.S. sales, it does not dispute that it receives indirect revenue from such sales—Olympus America pays Olympus Medical for the scopes and sells the scopes in the United States.  In a single month, Olympus America ordered approximately ninety CF-H180AL colonoscopes from Olympus Medical, at a cost of more than $14,000.00 per unit (almost $1.3 million total), plus nearly six hundred units of other Olympus Medical devices.  For these

9

reasons, the present record at least supports the inference that Olympus Medical derives substantial revenue from goods used in Georgia, and the Court finds that it may exercise jurisdiction under Georgia's long-arm statute.

**III. Does the Due Process Clause Permit Jurisdiction?**

Having concluded that Georgia's long-arm statute permits jurisdiction over Olympus Medical, the Court must determine whether the Due Process Clause permits jurisdiction. The Due Process Clause of the Fourteenth Amendment requires that "individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign[.]'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (first alteration in original) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring in judgment)). With this "fair warning" requirement, "the Due Process Clause 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit[.]'" *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). The courts recognize two types of jurisdiction that are consistent with the Due Process Clause: "general or all-purpose jurisdiction, and specific or case-linked jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915,

919 (2011). The Court may exercise general jurisdiction over a foreign corporation if the corporation has contacts with Georgia that "are so 'continuous and systematic' as to render [it] essentially at home in" Georgia. *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). "The 'paradigm all-purpose forums' in which a corporation is at home are the corporation's place of incorporation and its principal place of business." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1317 (11th Cir. 2018), *cert. denied sub nom. Waite v. Union Carbide Corp.*, 139 S. Ct. 1384 (2019) (mem.). Here, the Third Amended Complaint does not allege any facts to establish general jurisdiction over Olympus Medical.

But Plaintiffs did present enough facts to establish specific jurisdiction. "Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there," the Due Process Clause's "'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp.*, 471 U.S. at 472 (footnote omitted) (first quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984), then quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). "Thus '[t]he forum State does not exceed its powers under the Due

Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State' and those products subsequently injure forum consumers." *Id.* at 473 (alteration in original) (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 297–98).[3]

Here, Olympus Medical admits that it manufactured the colonoscope that allegedly injured Plaintiffs and that it sold the colonoscope to an affiliated company, which sold it to Athens Gastroenterology in Georgia. Furthermore, Olympus Medical sought to achieve and maintain a significant market share for its products, which required optimum sales activity by its distributors in the United States. When Olympus Medical sold its endoscopes, including its CF-H180AL colonoscopes, to Olympus America, it knew where the scopes were going: to medical providers in the United States. Olympus Medical did not restrict the sales of its scopes to certain areas of the United States, and it did not take any steps to prevent its colonoscopes from being sold to medical providers in Georgia. Accordingly, Olympus

---

[3] The Court understands that in *World-Wide Volkswagen*, the Supreme Court concluded that an Oklahoma court could not exercise personal jurisdiction over companies that sold an Audi automobile in New York to New York residents who "happened to suffer an accident while passing through Oklahoma." *World-Wide Volkswagen Corp.*, 444 U.S. at 295. That is because the companies had "no activity whatsoever in Oklahoma," did not directly sell cars in Oklahoma, and did not indirectly seek to serve the Oklahoma market. *Id.* In contrast, here, Olympus Medical sought to sell its endoscopes throughout the United States, including Georgia, and entered agreements with affiliated distributors to so.

12

Medical reasonably expected (or should have reasonably expected) that its endoscopes, including its CF-H180AL colonoscopes, would be purchased for use in Georgia.

Olympus Medical urges the Court to adopt a "stream of commerce plus" approach and conclude that Plaintiffs must establish that Olympus Medical purposefully directed its actions specifically toward Georgia. The "stream of commerce plus" test originated in the plurality opinion of *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102 (1987) (plurality).[4] Although the Supreme Court revisited its stream of commerce analysis in *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011), it did not reach a majority opinion adopting the "stream

---

[4] In *Asahi*, the question was whether the California courts could, in a case where the plaintiff was not a California resident, exercise personal jurisdiction over a foreign defendant that manufactured valve stems in Japan and sold them to a Taiwanese company for use in finished tire tubes that were sold throughout the world. The Taiwanese company sold a portion of its finished tire tubes with the defendant's valve stem in the United States, including California. The plurality opinion stated that the "placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State" and that additional conduct "may indicate an intent or purpose to serve the market in the forum State," such as "marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." 480 U.S. at 112. But both concurrences rejected the "additional conduct" requirement. Instead, they concurred in the judgment because the plaintiff was not a California resident, so California's minimal interests in the matter were strongly outweighed by the serious burdens placed on the alien defendant. *See id.* at 116-17 (Brennan, J., concurring) (adopting Part II-B but not Part II-A and finding that the case was "one of those rare cases in which 'minimum requirements inherent in the concept of "fair play and substantial justice" . . . defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities'" (alterations in original) (quoting *Burger King Corp.*, 471 U.S. at 477–78)); *id.* at 121-22 (Stevens, J., concurring) (adopting Part II-B but not Part II-A).

of commerce plus" test. In *J. McIntyre Machinery*, Justice Breyer concurred in the judgment reversing the New Jersey Supreme Court's decision that a New Jersey court could exercise personal jurisdiction over a British manufacturer that sold a *single* machine to a New Jersey customer through an American distributor but had no other contacts with New Jersey. In reaching his decision, Justice Breyer found that resolving the case required "no more than adhering to" the Supreme Court's existing precedents. *Id.* at 890 (Breyer, J., concurring in the judgment). Justice Breyer disagreed with the "plurality's seemingly strict no-jurisdiction rule," expressing concern that the plurality had not fully considered its modern-day consequences. *Id.* Olympus Medical pointed to no binding precedent adopting a "stream of commerce plus" requirement after *J. McIntyre Machinery*, and the Court declines to apply such a test.[5] And, the Court reiterates that the present record supports the conclusion that Olympus Medical engaged in a regular course of dealing that resulted in the delivery of hundreds of its products to the United States in

---

[5] Olympus Medical cited *Quashie v. Olympus America, Inc.*, 315 F. Supp. 3d 1329 (N.D. Ga. 2018), where the district court concluded that it could not exercise personal jurisdiction over Olympus Medical because it found that the plaintiff's factual allegations, taken as true, did not establish that Olympus Medical placed its Q180V duodenoscope into the stream of commerce with the expectation that it would be purchased by consumers in Georgia. *Id.* at 1339. *Quashie* is not binding precedent, and the factual background is distinguishable. Unlike in *Quashie*, Plaintiffs here alleged and presented evidence that Olympus Medical manufactured the CF-H180 colonoscope that allegedly caused Plaintiffs' injuries and that Olympus Medical sold its CF-H180 colonoscopes to Olympus America for the purpose of having them sold in the United States, including Georgia.

a single month, with no restriction on sales of the world's most popular endoscopes to Georgia customers.

Olympus Medical argues that *Madara v. Hall*, 916 F.2d 1510 (11th Cir. 1990) is directly on point. It is not. *Madara* involved a libel claim against pop rock superstar Daryl Hall, who made some unflattering comments about the plaintiff in a telephone interview with a reporter for *Music Connection* magazine. Hall was in New York, the reporter was in California, and the comments were quoted in an issue of the magazine. The plaintiff filed a libel action against Hall in Florida, asserting in part that personal jurisdiction existed because eighteen copies of the magazine were mailed to Florida, plus additional copies may have been available on Florida newsstands. The Eleventh Circuit emphasized that a defendant "will not be haled into a jurisdiction as a result of random, fortuitous, or attenuated contacts . . . or because of the unilateral activity of a third person." *Id.* at 1516. The Eleventh Circuit found that Hall had not purposefully established sufficient minimum contacts with Florida because he did not publish the magazine or sell it in Florida, and his other Florida activities (concert performances and recording sales) had nothing to do with the alleged libel. *Id.* at 1517-19. Here, unlike in *Madara*, Olympus Medical's contacts with Georgia are not random, fortuitous, or because of the unilateral activity of a third person. Instead,

they are the result of Olympus Medical's desire to sell its products like the CF-H180AL colonoscope throughout the United States, including Georgia, through its affiliated distributors.

Olympus Medical also relies on *Daimler AG v. Bauman*, 571 U.S. 117 (2014) and *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017). Neither case reached a holding on the issue presented here. Rather, *Daimler* concerned "the authority of a court in the United States to entertain a claim brought by foreign plaintiffs against a foreign defendant based on events occurring entirely outside the United States." 571 U.S. at 120. The plaintiffs attempted to invoke *general jurisdiction* over Daimler in California, arguing that Daimler may be sued in California "on any and all claims against it, wherever in the world the claims may arise." *Id.* at 121. The Supreme Court found that because Daimler was not "at home" in California, it could not be "subject to suit there on claims by foreign plaintiffs having nothing to do with anything that occurred or had its principal impact in California." *Id.* at 139.[6] *Bristol-Myers Squibb* concerned whether the California courts had specific jurisdiction to entertain the claims of *nonresidents* against a

---

[6] In *Daimler*, the Supreme Court did note that for a court to have specific jurisdiction, the action must arise out of or relate to the defendant's contacts with the forum. 571 U.S. 127. Here, this action arises out of injuries allegedly caused by Olympus Medical's CF-H180AL colonoscope; Olympus Medical sold such scopes to an affiliate company for the purpose of having them imported into the United States, including Georgia.

16

Delaware pharmaceutical company with its principal place of business in New York. 137 S. Ct. at 1777. The Supreme Court concluded that California courts could *not* exercise specific jurisdiction over the claims of the nonresidents who did not receive or ingest the allegedly defective drug in California because specific jurisdiction requires an affiliation between the forum and the underlying controversy.[7] *Id.* at 1781-82. There was no apparent dispute, though, that the claims of the *resident* plaintiffs—who were prescribed the drug in California, ingested it in California, and were injured in California—could pursue their claims in the California courts.

In summary, drawing all reasonable inferences from the present record in Plaintiffs' favor, the Court's exercise of personal jurisdiction over Olympus Medical would not offend due process because Olympus Medical reasonably expected that its endoscopes, including its CF-H180AL colonoscopes, would be purchased for use in Georgia.

As a matter of *obiter dictum,* the Court notes the troublesome result if Olympus Medical's rationale is carried to its ultimate conclusion. A foreign manufacturer could set up an

---

[7] The fact that the defendant pharmaceutical company contracted with a California company to distribute its drug nationally did not provide a basis for personal jurisdiction over claims brought by nonresidents because there was no allegation that (1) the defendant engaged in acts with the contractor in California, (2) the defendant was liable for the contractor's California conduct, or (3) the plaintiffs received the drug via the California contractor. *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1783.

arrangement with its affiliated distributor such that the distributor is authorized, and even required pursuant to the distributor agreement, to sell the manufacturer's product throughout the United States, with the clear expectation that it should sell the product in any state where demand exists. But the foreign manufacturer does not direct its distributor to restrict its sales to any particular state. Under Olympus Medical's argument, the manufacturer can escape legal responsibility for any defect in its product because it has decided that its product will be sold generally everywhere but nowhere in particular. Constitutional due process protection may be broad, but it is not unlimited. It does not provide shelter for a foreign manufacturer that purposefully makes its product available in the United States when that product causes injury in a state where the manufacturer had a reasonable expectation its product would be sold.

CONCLUSION

For the reasons set forth above, the Court finds that it may exercise personal jurisdiction over Olympus Medical Systems Corporation. Accordingly, Olympus Medical's motion to dismiss (ECF No. 60) is denied.

AMENDED SCHEDULING ORDER

The scheduling/discovery order entered on May 20, 2019 (ECF No. 63) is amended to the following extent:

Fact discovery shall end on July 27, 2020.

Plaintiffs' expert disclosures are due by June 24, 2020.

Defendants' expert disclosures are due by July 27, 2020.

Plaintiff's rebuttal expert disclosures are due by August 25, 2020.

Summary judgment motions are due by October 5, 2020.

If no summary judgment motion is filed, then any motion to exclude expert witnesses pursuant to Federal Rule of Evidence 702 shall be filed by October 26, 2020. If a summary judgment motion is filed, then any motion to exclude expert witnesses is due within twenty-one days after the Court rules on the last pending summary judgment motion or by the deadline for motions in limine set in a notice setting pretrial conference, whichever is sooner.

IT IS SO ORDERED, this 22nd day of January, 2020.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA